UNITED STATES of America,
Plaintiff–Appellee,

v.

Jeffrey Wayne DUNCAN,
Defendant–Appellant.

Nos. 90–5111, 90–5191.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 21, 1990.

Decided Nov. 8, 1990.

Joseph M. Whittle, U.S. Atty., Terry
Cushing (argued), James A. Earhart, Asst.

U.S. Attys., Louisville, Ky., for plaintiff-appellee.

Allen W. Holbrook (argued), Holbrook, Wible, Sullivan & Helmers, Owensboro, Ky., for defendant-appellant.

Before KEITH and MILBURN, Circuit Judges, and ZATKOFF, District Judge *.

MILBURN, Circuit Judge.

Defendant-appellant Jeffrey Wayne Duncan appeals his conviction and the sentence imposed after a jury found him guilty of distributing and possessing with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), but not guilty of using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Duncan also appeals the district court's refusal to order the return of some cash seized at his arrest. For the reasons that follow, we affirm.

## I.

### A.

On February 22, 1989, a federal grand jury sitting in Louisville, Kentucky, indicted Duncan on one count of distributing and possessing with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). The grand jury also charged Duncan with one count of using and carrying a firearm (a .357 magnum revolver) during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). A jury trial began on October 10, 1989, and the jury returned a verdict on October 11, 1989, finding Duncan guilty of the possession and distribution count but not guilty of the firearms charge.

The district court held a sentencing hearing in which it concluded that the sentence should be enhanced by two levels under the United States Sentencing Guidelines ("Guidelines") for possession of a firearm during the commission of the drug offense. In an order entered December 28, 1989, the court imposed a sentence of twenty-one months imprisonment and three years supervised release plus payment of a $50 special assessment and payment of $380 toward the costs of investigation and prosecution. On January 4, 1990, the defendant filed a notice of appeal (No. 90–5111) which served to appeal from the December 28, 1989, judgment of conviction and sentence.

In the meantime, on December 8, 1989, the defendant filed a motion for the return of personal property seized from him and his vehicle on May 11, 1988, including cash "not part of marked bills." In an order entered December 28, 1989, the district court granted the motion as to "all items seized ... and introduced as evidence at trial with the exception of $397.25 cash."

On January 8, 1990, the government filed a motion to alter or amend the order releasing personal property arguing that the order should only have released items not introduced as evidence. In an order entered January 16, 1990, the district court amended the order of December 28, 1989, to release "all items seized from Duncan on May 11, 1988, and *not* introduced as evidence at trial with the exception of $397.25 cash." (Emphasis added). Like the original order, the amended order specified that $380 of the cash was to be applied toward the costs of investigation and prosecution and the remainder was to be applied toward the special assessment. On January 24, 1990, the defendant filed a notice of appeal (No. 90–5191) from the amended order of January 16, 1990. In an order filed February 13, 1990, this court ordered consolidation of case numbers 90–5111 and 90–5191.

### B.

There are essentially two versions of the facts in this case depending upon whether one accepts the testimony of Pamela Johnson, a police informant, or the testimony of the defendant. According to Johnson, she first met the defendant at the Bamboo Lounge in Nashville, Tennessee. She next saw the defendant at her home in Madison-

* Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

ville, Kentucky, when he made a delivery of cocaine to be picked up by a third party. In January and February of 1988, the defendant left cocaine for a third party at Johnson's home on one occasion and on two occasions delivered cocaine to Johnson's home for her to distribute. J.A. 185–86. On one of these occasions, the defendant left approximately thirty, twenty-five dollar bags of cocaine for distribution.

As part of her agreement to cooperate with the Madisonville, Kentucky police department, Johnson was supplied money, through detective Langdon, for purchasing cocaine from Duncan. On May 11, 1988, at approximately 1:30 a.m., the defendant arrived at Johnson's home to supply Johnson with one-eighth (⅛) ounce of cocaine in exchange for $380. Initially Johnson was able to purchase only one-sixteenth (1/16) ounce for $190 because she had not been advanced enough money to buy the full one-eighth (⅛) ounce. The exchange was made in the front seat of the automobile the defendant was driving, and, during the transaction, a .357 magnum revolver lay in the front seat between the defendant and Johnson.

The defendant returned to Johnson's home at about 11:15 a.m. the same morning to complete the transaction. In the meantime, Johnson contacted detective Langdon for additional money and told him what had transpired. The final exchange of drugs for money took place inside Johnson's residence on Oates Street in Madisonville, Kentucky, while the defendant's automobile was parked on the street outside.

Duncan's testimony as to what happened was quite different from Johnson's. Duncan characterized himself as an out-of-work employee who was looking for some type of business venture he could enter with some money he had saved during his previous employment. Duncan learned that Ms. Johnson's cousin owned a night club which was for sale. During meetings concerning Duncan's possible purchase of the night club, Johnson introduced Duncan to cocaine. Duncan testified that thereafter Johnson continually asked him for cocaine. At Johnson's request, Duncan purchased approximately one-quarter (¼) ounce (one-half of which was for Johnson) of cocaine "on the street" from an unknown person.

According to Duncan, the initial exchange of one-sixteenth (1/16) ounce occurred inside Ms. Johnson's residence instead of in the front seat of the automobile. After the exchange, Duncan and Johnson left the Johnson residence and traveled to a store to purchase some beer. According to Duncan, the firearm belonged to another person and was in the back seat of the car in a bag at all times. As to the sentence imposed, it is clear that the district judge accepted Johnson's version of the events and rejected Duncan's.

Also testifying at the trial was detective Langdon. Langdon watched Duncan depart from Johnson's residence by automobile at about 1:05 p.m. on May 11, 1988. Langdon surmised that Duncan had completed the final transaction, and he ordered Duncan stopped. Langdon was present when Duncan was stopped, arrested and searched. Langdon testified that during a warrantless search of the defendant and the passenger compartment of his automobile conducted pursuant to the arrest, officers found cocaine in the defendant's jacket, a loaded .357 magnum revolver in a black bag in the back seat of the vehicle, and over $300 in cash. By matching serial numbers, Langdon was able to identify $210 as money supplied to Johnson. Two extra rounds of ammunition for the .357 magnum revolver were found in the defendant's pants pocket.

The issues presented in this appeal are: (1) whether, given the defendant's acquittal on the firearms charge and possible ambiguity in the indictment, the district court abused its discretion by imposing an enhanced penalty under the Guidelines for possession of a firearm during commission of a drug offense; (2) whether the district court erred by refusing to suppress evidence secured from the warrantless arrest and subsequent search; and (3) whether the district court erred in refusing to order the return of unmarked cash seized from Duncan at the time of his arrest.

## II.

### A.

■ Appellate review of sentences imposed under the Sentencing Guidelines is governed by 18 U.S.C. § 3742, which provides in relevant part:

**(e) Consideration.**—Upon review of the record, the court of appeals shall determine whether the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines;

.    .    .    .    .

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

As it pertains to sentencing under the Guidelines, a district court's finding that a defendant possessed a firearm during a drug crime is a factual finding subject to the clearly erroneous standard of review. *See United States v. Moreno*, 899 F.2d 465, 470 (6th Cir.1990); *United States v. Otero*, 868 F.2d 1412, 1415 (5th Cir.1989); *United States v. Gillock*, 886 F.2d 220, 223 (9th Cir.1989); see also *United States v. Mocciola*, 891 F.2d 13, 16–17 (1st Cir.1989); *but see United States v. Rush*, 890 F.2d 45, 52 (7th Cir.1989).

■ On review of motions to suppress evidence, findings of fact will be upheld unless clearly erroneous; however, a district court's conclusions of law are reviewed de novo. *United States v. Sangineto–Miranda*, 859 F.2d 1501, 1512 (6th Cir.1988).

### B.

### 1.

Duncan contests the enhancement of his sentence as an abuse of discretion. His sentence was enhanced by two levels under § 2D1.1(b) of the Sentencing Guidelines which provides that "[i]f a firearm or other dangerous weapon was possessed during commission of the [drug] offense, increase [the base offense level] by 2 levels." The commentary to that section states:

The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.... The adjustment is to be applied even if several counts are involved and the weapon was present in any of them.

Guidelines § 2D1.1(b) commentary at n. 3. We have held that the "possession of a firearm during the commission of the offense establishes a presumption that the possession is connected to the offense." *Moreno*, 899 F.2d at 470.

The district court found that the defendant "possessed a loaded .357 magnum caliber revolver on his front seat next to him during a drug transaction, which occurred in the front seat of his car on May 11, 1988." J.A. 38. The court further found that during a later transaction the same day, the gun was present in the defendant's automobile parked on the street outside Johnson's home while a drug transaction was being completed inside Johnson's home. J.A. 39.

The district court also found that the nature of the weapon and the presence in Mr. Duncan's pocket of two rounds of ammunition for the weapon "clearly belie[d] Mr. Duncan's assertion that the gun was just not his and not really known to him to be present ...." The district court's conclusion as to the possession of the weapon was as follows:

The fact that the actual drug transaction took place in the home rather than in the car does not dissuade this Court that the gun was easily accessible to Mr. Duncan and that it was, therefore, present during the offense as it was at the first time in the front seat of the car with Ms. Johnson.

Therefore, the United States has met its burden of proof to show that the weapon

was present. Thereafter, the United States' burden shifts to the defendant to show that it was clearly improbable that the weapon was connected with the offense....

In this case, the defendant has not shown that it was improbable that this weapon was connected with the offense; and as a matter of fact, I believe that the facts that I have found in the context of the indictment demonstrate to me that the— it is probable that the weapon was connected with the offense.

J.A. 41–42. Accordingly, the district court enhanced the sentence.

### 2.

■ Duncan's arguments rely largely on *United States v. Williams*, 894 F.2d 208 (6th Cir.1990), to show that the district judge abused his discretion in this case. In *Williams*, the sentence of one co-conspirator (the accomplice) was enhanced based upon the possession of a weapon by another co-conspirator (the principal) who was acquitted of a section 924(c) using and carrying charge. *Id.* at 211–13. However, the district court did not enhance the sentence of the principal. *Id.* This court held that it was an abuse of discretion for the district court, without explanation, to enhance the sentence of the accomplice without enhancing the sentence of the principal upon whose possession the enhancement was based. *Id.* Williams did not take issue with the district court's factual findings, nor did *Williams* conclude that it would have been an abuse of discretion for the district court to enhance the sentence of the principal. *Williams* simply held that, given one set of facts from which to work, the district court obviously applied the Guidelines inconsistently. *Id.* at 212–13. Thus, *Williams* is little help to the defendant in this case.

Duncan argues that the danger of inconsistent application of the Guidelines, the evil avoided in *Williams*, is illustrated by inconsistent holdings regarding the amount of evidence needed to show possession of a firearm and a nexus between the firearm and the drug offense. However, the cases cited do not illustrate inconsistent holdings. *See United States v. Jones*, 875 F.2d 674, 676 (8th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989) (firearms located "in close proximity to the drugs"); *United States v. Gillock*, 886 F.2d 220, 222–23 (9th Cir.1989) (relying on "close proximity"); *United States v. Morales*, 880 F.2d 827, 828 (5th Cir.) (citing *United States v. Otero*, 868 F.2d 1412, 1414 (5th Cir.1989), in which "a gun in the defendant's van used to transport cocaine, but not present in the motel room where the drug deal took place, was sufficient to establish constructive possession of the weapon" and justify enhancement), *cert. denied,* — U.S. —, 110 S.Ct. 375, 107 L.Ed.2d 361 (1989); *United States v. Rush*, 890 F.2d 45, 52 (7th Cir.1989) (gun was recovered from a car parked "a considerable distance" from where the defendant was apprehended); *United States v. White*, 875 F.2d 427, 433 (4th Cir.1989) (upholding enhancement of the sentence of a passenger convicted of aiding and abetting the driver where the weapon was found under the driver's seat); *see also United States v. McGhee*, 882 F.2d 1095, 1099 (6th Cir.1989) (noting that the firearms were "readily accessible to anyone who knew their location," but further observing that "nothing in section 2D1.1(b) of the guidelines, or the accompanying commentary, says that firearms have to be readily accessible to be 'connected' with the drug offense"). The cases are all consistent in that they recognize that enhancement is appropriate if a weapon is found in the residence where the drug transaction occurs, in the automobile that facilitated the drug transaction, or on the person of the defendant or an accomplice.

We find these cases to be consistent with each other and with the comments of the Sentencing Commission that the presence of firearms increases the level of danger and justifies a stiffer sentence. Therefore, we hold that even with regard to the second phase of the transaction when the gun was outside in the automobile, the district court correctly ruled that the defendant's possession of the gun was an appropriate

basis for an enhanced penalty under section 2D1.1(b).

### 3.

■ Duncan also argues that his acquittal on the firearms carrying charge should have had more bearing on the sentence enhancement. Duncan recognizes that several courts have upheld enhanced penalties for firearm possession even though the defendant was acquitted of a firearms carrying charge at trial, *see United States v. Mocciola,* 891 F.2d 13, 16–17 (1st Cir.1989); *United States v. Juarez–Ortega,* 866 F.2d 747 (5th Cir.1989); *see also United States v. White,* 875 F.2d 427, 433 (4th Cir.1989) (enhancement upheld despite dismissal of firearm count at plea bargain); however, Duncan purports to make a distinction between the argument that his acquittal on the firearms charge collaterally estopped subsequent sentence enhancement and the argument that his acquittal is relevant to the district court's application of the Guidelines.

This purported distinction overlooks the rationale of *Mocciola* and *Juarez–Ortega* that an acquittal on a firearms carrying charge leaves ample room for a district court to find by the preponderance of the evidence that the weapon was possessed during the drug offense. 891 F.2d at 17; 866 F.2d at 748–49; *see McMillan v. Pennsylvania,* 477 U.S. 79, 92, 106 S.Ct. 2411, 2419, 91 L.Ed.2d 67 (1986) (facts underlying sentencing not subject to beyond reasonable doubt standard); *see also United States v. McGhee,* 882 F.2d 1095, 1097–99 (6th Cir.1989) (upholding § 2D1.1(b) against due process challenge). We reject Duncan's offered distinction and join those circuits that allow an enhancement under § 2D1.1(b) despite a prior acquittal under 18 U.S.C. § 924(c).

### 4.

■ Duncan next argues that enhancement should not be allowed because the indictment was duplicitous. Duncan does not challenge the conviction but argues that the government had the benefit of two offenses to serve as a basis for sentence enhancement. The danger of a duplicitous indictment, that it is difficult to determine which offense underlies the conviction, *United States v. Duncan,* 850 F.2d 1104, 1108 n. 4 (6th Cir.1988), is not present in this case because Duncan did not deny the events charged. He simply argued that he was entrapped.

Moreover, the Guidelines call for a two-level enhancement if the firearm was present at any one of several transactions charged. Guidelines § 2D1.1 (commentary). Given our conclusion that the district court could enhance the sentence based on the presence of the firearm in the automobile parked outside the house while a drug transaction occurred inside, any ambiguity in the indictment was harmless.

### 5.

■ Duncan also argues that in "applying the high range of the Guideline rather than the low range of the Guideline," the district court abused its discretion. Appellate courts recognize that trial judges deal with "real live defendants" and are in a better position than appellate courts to choose the appropriate sentence. *See United States v. Joan,* 883 F.2d 491, 496 (6th Cir.1989); *United States v. Rodriguez,* 882 F.2d 1059, 1068 (6th Cir.1989) (recognizing that in departing from the Guidelines on appropriate factors, the district court's discretion in setting the sentence is broad); *see also Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 650, 102 L.Ed.2d 714 (1989).

At the bottom line, the government is correct to argue that the district court's finding that Duncan possessed a firearm during the drug crime was a factual finding subject to the clearly erroneous standard of review. *See, e.g., United States v. Moreno,* 899 F.2d 465, 470 (6th Cir.1990). Given the prerogative of a finder of fact to choose whom it will believe, it cannot be said that the district court clearly erred in accepting the government's version of the facts and concluding that the defendant possessed a weapon during the drug trafficking crime. Furthermore, none of the arguments presented by Duncan create a

"firm conviction that a mistake has been made" in applying the Guidelines to the district court's factual finding. *See United States v. Phillips,* 888 F.2d 38, 40 (6th Cir.1989). Accordingly, we find no error in the enhancement of the sentence pursuant to § 2D1.1(b) of the Guidelines.

### C.

Duncan next challenges the district court's refusal to suppress evidence obtained pursuant to the warrantless arrest and subsequent warrantless search of his person and the interior of his automobile. Duncan recognizes that the investigating officers had probable cause for an arrest and warrant as of approximately 1:00 a.m. on May 11, 1988; however, he argues that this fact works in favor of suppression rather than against it. Specifically, Duncan argues that since the police had probable cause they were obligated, absent an independent showing of exigent circumstances, to secure a warrant. We disagree.

A duly authorized law enforcement officer may "make a warrantless arrest in a public place even though he had adequate opportunity to procure a warrant after developing probable cause for arrest." *United States v. Watson,* 423 U.S. 411, 426–27, 96 S.Ct. 820, 829, 46 L.Ed.2d 598 (1986) (Powell, J., concurring). In *Watson,* the Court specifically declined an invitation to transform a judicial preference for warrants into a constitutional rule requiring arrest warrants absent exigent circumstances. *Id.* at 423–24, 96 S.Ct. at 827–28. Under *Watson,* the defendant's arrest did not violate the Fourth Amendment even if there were no exigent circumstances and even if the officers had ample time to secure an arrest warrant.

The next step in our analysis concerns the search of the interior of the defendant's automobile. "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest,

search the passenger compartment of that automobile." *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981) (footnote omitted). Under *Belton* and *Watson,* the arrest of the defendant and the search of his vehicle was reasonable and permissible. Thus, the arrest did not taint oral statements made by the defendant at the time of his arrest, and the items seized from the passenger compartment of the vehicle, *i.e.,* drugs, a revolver, and a "beeper," were not the fruit of an illegal search.

The defendant seems to confuse the issue here by arguing that since he was in his automobile when he was arrested, seizure of his vehicle was a necessary prerequisite of his arrest, and, therefore, the officers were required to obtain a warrant for the search and seizure of his vehicle. Even if this argument made sense in light of *New York v. Belton,* the search and seizure of the vehicle was permissible under *California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), and *United States v. Markham,* 844 F.2d 366 (6th Cir.1988).

Duncan recognizes the existence of these cases but attempts to limit the holdings to fact patterns where there is an independent showing of exigent circumstances. In *Markham* we clearly rejected any such limitation and read *California v. Carney* as holding that whenever a vehicle is readily capable of use on the public roads, a warrantless search is permissible given probable cause to believe that the vehicle contains evidence. 844 F.2d at 369. Thus, we reiterate our holding that the district court did not err in refusing to suppress evidence obtained from the arrest and subsequent search.

### D.

Finally, the defendant challenges the district court's failure to grant his motion filed pursuant to Federal Rule of Criminal Procedure 41(e) [1] for the return of per-

1. Rule 41(e) provides, in relevant part: "A person aggrieved by an unlawful search and seizure or by the deprivation of property may

move the district court for the district in which the property was seized for the return of the

sonal property insofar as the district court withheld unmarked cash seized at the time of the arrest and applied it to the sentence. Because the defendant's motion was made after the trial concluded and there was no longer a need for the property seized as evidence, "the request for return of the seized property is [essentially] a civil equitable proceeding, notwithstanding the fact that the motion was styled under Fed. R.Crim.P. 41(e)." *United States v. Young*, 878 F.2d 383 (6th Cir.1989) (unpublished order); *see also United States v. Martinson*, 809 F.2d 1364, 1367 (9th Cir.1987).

Consequently, we are not concerned here with the sentence imposed by the district court.[2] What we are concerned with is whether the district court properly balanced the competing equities in deciding whether return was in order. *Angel–Torres v. United States*, 712 F.2d 717, 719–20 (1st Cir.1983); *see Martinson*, 809 F.2d at 1367; *cf. Sovereign News Co. v. United States*, 690 F.2d 569, 577 (6th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). Because of the equitable nature of the determination, "our standard of review is abuse of discretion." *Barrett v. Secretary of Health & Human Serv.*, 840 F.2d 1259, 1263 (6th Cir.1987).

"The general rule is that seized property, other than contraband, should be returned to the rightful owner after the criminal proceedings have terminated." *Sovereign News*, 690 F.2d at 577 (quoting *United States v. LaFatch*, 565 F.2d 81, 83 (6th Cir.1977), *cert. denied*, 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978)). However, a defendant's right to the return of lawfully seized property is subject to any continuing interest the government has in the property. *United States v. Francis*, 646 F.2d 251, 263 (6th Cir.), *cert. denied*, 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981). The government's interest may take different forms as long as it is a legitimate interest. *See Sovereign News*,

690 F.2d at 577 (use in investigation); *Francis*, 646 F.2d at 263 (right to levy).

In this case, the government had an interest in insuring that the monetary penalties imposed as part of the sentence were paid. Moreover, the record indicates that $380 of the cash seized, although some of it was unmarked, were proceeds of the illegal drug sale. Furthermore, by applying the cash to the sentence imposed, the district court essentially allocated the defendant's property for his benefit rather than depriving him of the property altogether. Under these circumstances, we will not say that the district court abused its discretion in balancing the competing equities. Thus, we hold that the district court did not err in denying the return of the unmarked cash seized at the time of the defendant's arrest.

## III.

Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED, as is the order denying the return of unmarked cash that was seized at the time of the defendant's arrest.

---

property on the ground that such person is entitled to lawful possession of the property."

**2.** The government devotes much effort to showing that the monetary part of the sentence was

permissible; however, we see the defendant's arguments as directed at the disposition of the money seized rather than attacking the sentence.