956 F.2d 1164
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jorge F. CAZARAZ and Jvier G. Cazaraz, Defendants-Appellants.
 No. 91-5239.
 United States Court of Appeals, Sixth Circuit.
 March 4, 1992.
 
 Before MILBURN and RYAN, Circuit Judges, and ZATKOFF, District Judge.*
 PER CURIAM.
 
 
 1
 Defendants Jorge Francisco Cazaraz and Javier or Jvier Guilberto Cazaraz appeal their convictions following their conditional guilty pleas to charges of possession of marijuana with the intent to distribute in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). The principal issues presented in this appeal by defendants are (1) whether the district court erred in effectively deciding the case before the suppression hearing was over, and (2) whether the district court properly denied their motion to suppress evidence.
 
 
 2
 In addition, defendant Jorge Francisco Cazaraz challenges the sentence imposed by the district court following his guilty plea conviction. The sole issue raised by Jorge Francisco Cazaraz with regard to his sentence is whether the district court erred in finding that his criminal history level was level IV rather than level III. For the reasons that follow, we affirm.
 
 I.
 A.
 
 3
 On December 12, 1989, Memphis, Tennessee Police Officers Frank Bell and Anthony Bianchi set up radar surveillance near the junction of Interstate 40 and Interstate 240. At approximately 12:51 a.m., the radar gun, operated by Officer Bell, indicated that a Ford van driven by Javier Cazaraz was traveling 51 miles-per-hour in a 40 mile-per-hour speed zone. Jorge Cazaraz was a passenger in the van. The van windows were tinted and neither officer saw into the van as it passed them. Moreover, neither officer saw the license plate of the van until they pulled behind it to stop it for the traffic violation. The van was stopped on Interstate 240, near the Chelsea exit. After the van had been stopped, a check of the license plate number revealed that the van was registered to Johnny Reynolds of Duncanville, Texas, and that the license plate had expired the previous month.
 
 
 4
 As the officers approached the van, Javier Cazaraz, the driver, got out of the van and walked towards the police car. He was met between the police car and the van by officer Bell. Officer Bell told Cazaraz why the van had been stopped and asked for a driver's license or other form of identification. Javier Cazaraz had no identification, and Officer Bell asked him to sit in the police car. After he had entered the police car, Javier Cazaraz told the police that his brother was in the van and had identification.
 
 
 5
 At that point, both officers approached the van in order to obtain some identification from the passenger, Jorge Cazaraz. When Officer Bell neared the van, Jorge Cazaraz stepped out of the van. As he exited the van, Officer Bell smelled the strong odor of marijuana coming through the open door of the van.
 
 
 6
 Officer Bell then asked Jorge Cazaraz for some identification. Cazaraz produced a Texas driver's license and told Officer Bell that the van belonged to his cousin, a name different than the registered owner of the van. Officer Bell asked Cazaraz to step away from the van. As the two men walked toward the police car, Cazaraz spontaneously stated that there "were no guns or drugs inside of the van."
 
 
 7
 While Jorge Cazaraz stood outside the police car, Officer Bell entered the police car and asked Javier Cazaraz if there were guns, contraband or drugs in the van. He also asked Javier Cazaraz for consent to search the van. Javier Cazaraz orally consented to such a search. After receiving oral consent, office Bell obtained a written consent form for the search from the front of the police car. The form was written in both English and Spanish. Officer Bell read the English version of the form to Javier Cazaraz. He then handed the form to Javier Cazaraz, watched him read both versions of the form, asked Cazaraz if he understood the form, asked Cazaraz if he would sign the form, and watched Javier Cazaraz sign both the English and Spanish versions of the form.
 
 
 8
 Following the signing of the written consent form, Officer Bell returned to the van. He opened the van and again noticed a strong odor of marijuana. He searched the van and found nine garbage bags containing approximately 213 pounds of marijuana in the van.
 
 B.
 
 9
 On December 12, 1989, defendants Jorge Cazaraz and Javier Cazaraz were indicted by the Federal Grand Jury for the Western District of Tennessee. They were charged with possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Subsequently, defendants filed motions to suppress evidence. However, following a hearing on the motions to suppress evidence on May 25, 1990, the district court denied defendants' motions.
 
 
 10
 Thereafter, on July 23, 1990, defendants entered conditional guilty pleas to the indictment pursuant to Federal Rule of Criminal Procedure 11(a)(2). The conditional guilty pleas reserved the suppression issue for appeal.
 
 
 11
 On January 18, 1991, defendants were sentenced. Javier Cazaraz was sentenced to fifty-seven months imprisonment and three years supervised release. Jorge Cazaraz was sentenced to seventy-seven months imprisonment and three years supervised release. Defendants filed a timely appeal.
 
 II.
 
 12
 In this case, defendants argue that the trial judge decided the case before the suppression hearing was over. They further argue that the trial judge's denial of the motion to suppress was clear error, and defendant Jorge Cazaraz challenges his sentence.
 
 A.
 
 13
 At the suppression hearing, defendants sought to prove that the stop of their van was pretextual in that it resulted from a pattern of stopping vehicles driven by Hispanics or with Texas license plates. Officer Bell testified first at the suppression hearing. Among other things, he testified that he and Officer Bianchi clocked defendants' van on radar traveling at 51 miles-per-hour in a 40 mile-per-hour zone. He further testified that the speeding violation was the first thing that brought the vehicle to his attention. He also testified that he could not see into the van as it passed. On cross-examination Officer Bell testified that he had made one prior drug stop at the location where he stopped defendants, and that stop occurred about a month prior to defendants' arrest. Finally, Officer Bell testified that he did not see the license plates on defendants' van until after he pulled behind them in order to stop them for the traffic violation.
 
 
 14
 Thereafter, defendant Jorge Cazaraz testified. Subsequently, the court and defendants' counsel engaged in a protracted discussion about whether it was necessary to call Officer Bianchi, Officer Bell's partner, to the stand in light of Officer Bell's testimony. Specifically, the court asked defendants' counsel what they intended to show by calling Officer Bianchi to the stand. Defendants' counsel replied:
 
 
 15
 ... also I think certainly where the vehicle was, what they saw, whom they saw what they did is critical to whether or not the stop was--whether or not the stop was legal and our posture obviously is this is a pretext,....
 
 J.A. 92-93. The court then stated:
 
 16
 It is going to be hard to show pretext on this particular motion where the proof before the court is that this officer is in a car facing south on the interstate and this vehicle went by and was clocked 51 in a what, 40 mile zone and then they got behind this vehicle and stopped this vehicle and the person driving the vehicle, according the officer, did not have a driver's license, did not have any kind of identification. He was placed in a squad car for the purposes of checking on that fact and checking on his identity, and then there was a license plate check, then it turned out the passenger, when he went up to the van, did have some kind of license, did have some kind of identification. When he went up to the van he smelled a strong odor of marijuana and he had smelled marijuana before.
 
 
 17
 They gave a name which was not the name of the person registered to the vehicle, ... It is going to be pretty hard to shop [sic] pretext in this context on this motion for a suppression order. That is all I'm saying, I'm just summarizing.
 
 J.A. 93-94. Defendants' counsel replied:
 
 18
 Where my problem begins is that the pattern that the police are using is that they are stopping vehicles because of the license plate. And we have got to try to establish that. Speed really isn't a factor here, that is just the excuse to make the stop.
 
 J.A. 94. The court then replied:
 
 19
 The problem here with that is that when the vehicle went by, according to the officer, he didn't see the license plate, that's his testimony ...
 
 
 20
 J.A. 94. Thereafter, the court permitted Officer Bianchi to testify with regard to the essential facts of the case. Officer Bianchi also testified that he did not see the license plate on the van until the squad car pulled up behind it. He testified that he had been involved in six or seven traffic stops that involved drug seizures. He testified that most of these six or seven vehicles were not cars with Texas license plates. Finally, he testified that he does stop cars with Tennessee license plates that are traveling 51 miles-per-hour at the location where defendants were stopped.
 
 
 21
 The district court denied the motion to suppress. The court noted that it had already summarized its view of the evidence. It also found that consent for the search was voluntarily given, that the proof before the court showed that there was no pretext for stopping defendants' van, and that the odor of marijuana was probable cause to search the vehicle. (Transcript of suppression hearing, pp. 90-92).
 
 
 22
 Defendants' contention that the district court decided the suppression issue after Officer Bell's testimony is flatly contradicted by the record. Although the district court summarized Officer Bell's testimony and stated that pretext would be hard to prove in light of such testimony, the district court not only permitted Officer Bianchi to testify but also made findings of fact following all the testimony. Moreover, although these findings included, in part, the district court's earlier summary of Officer Bell's testimony, the use of such summary did not demonstrate prejudice or that the court had reached its decision after Officer Bell's testimony because the remaining testimony from Officer Bianchi was entirely consistent with Officer Bell's earlier testimony.
 
 
 23
 Defendants also challenge the district court's limiting of their questioning of Officer Bianchi. We note that the only limitation imposed by the district court concerned the extent of Officer Bianchi's drug interdiction training.
 
 
 24
 A district court's ruling on evidentiary matters is reviewed for an abuse of discretion. Schrand v. Federal Pac. Elec. Co., 851 F.2d 152, 157 (6th Cir.1988). An abuse of discretion exists where the reviewing court is firmly convinced that a mistake has been made. Id. at 157. Additionally, in order to justify reversal, the error must affect a party's substantial rights. Id.; see also Zamlen v. City of Cleveland, 906 F.2d 209, 215-16 (6th Cir.1990), cert. denied, 111 S.Ct. 1388 (1991). The error is not harmless unless the court can say with fair assurance that the error did not affect the outcome of the case. Zamlen, 906 F.2d at 215-216. This determination is guided by such factors as the closeness of the case and whether the evidence bears heavily on a dispositive issue. Schrand, 851 F.2d at 157.
 
 
 25
 In this case, the district court's limiting the testimony of Officer Bianchi did not affect the outcome. First, Officer Bianchi did testify, and his testimony was entirely consistent with Officer Bell's testimony. Second, despite the limitation announced by the district court, it allowed defendants' counsel wide latitude in questioning Officer Bianchi, including allowing questions on the number of traffic stops which resulted in drug arrests in which Officer Bianchi was a participant and testimony about the number of those traffic stops involving Texas license plates. As earlier stated, the only limitation on the questioning of Officer Bianchi involved questions about the extent of his drug interdiction training. Similarly, at the conclusion of Officer Bell's testimony, the district court limited questions about whether he had seen a DEA film involving a drug courier profile. In light of the evidence presented at the suppression hearing, the limitation on the questioning of Officer Bianchi had no effect on the outcome of the case. Therefore, if any error was committed by the district court in limiting the questioning of Officer Bianchi, it was harmless beyond a reasonable doubt.
 
 B.
 
 26
 Defendants next argue that the district court's denial of defendants' motion to suppress was clear error. In our review of motions to suppress evidence, findings of fact will be upheld unless clearly erroneous; however, a district court's conclusions of law are reviewed de novo. See United States v. Duncan, 918 F.2d 647, 650 (6th Cir.1990), cert. denied, 111 S.Ct. 2055 (1991). Moreover, when reviewing the denial of a motion to suppress evidence, we must consider the evidence in the light most favorable to the government. See United States v. Oates, 560 F.2d 45, 49 (2d Cir.1977).
 
 
 27
 In this case, defendants sought to suppress the marijuana seized from their van by asserting that the stop of their van was pretextual. Essentially, defendants asserted that the stop was pretextual because the van was stopped due to its being driven by two Hispanics and having Texas license plates. However, as found by the district court, no evidence of pretext for the stop is present. The evidence showed that defendants committed a traffic violation in the presence of the officers. Moreover, both officers testified that they were unable to see into the van because of its tinted windows, and that they did not know the van had Texas license plates until they pulled behind it to stop it.
 
 
 28
 In United States v. Dunson, 940 F.2d 989, 993 (6th Cir.1991), petition for cert. filed, (U.S. Dec. 24, 1991) (No. 91-6825), this court held that where a speeding violation is committed in the presence of the police and the defendants fail to show that the police were using questionable criteria in deciding which speeders to stop, no basis existed for holding that the traffic stop was constitutionally unreasonable or that it interfered with the constitutional rights of the defendants. Although defendants in this case sought to elicit evidence of other motives for the traffic stop, nothing in the record of the suppression hearing suggests any reason for the stop other than the speeding violation. Thus, the facts simply do not support the contention that the stop was pretextual. See United States v. Crotinger, 928 F.2d 203, 206 (6th Cir.1991). Finally, although Officers Bell and Bianchi had probable cause to search the van, they nonetheless obtained both oral and written consent from the driver of the van, Javier Cazaraz, to search the vehicle. Nothing in the record suggests that this consent was procured by coercion or intimidation. Rather, the record shows that the consent was voluntary. See Schneckloth v. Bustamonte, 412 U.S. 218, 250 (1973).
 
 C.
 
 29
 Finally, defendant Jorge Cazaraz argues that the district court erred in determining his criminal history level. Jorge Cazaraz was placed in criminal history category IV because he accumulated seven criminal history points. Three of these criminal history points resulted from a DWI conviction in Texas which occurred within eighteen months of the offense in this case. Specifically, Cazaraz was fined $600.00 and sentenced to two years probation as the result of a July 1989 DWI conviction. Further, he was still on probation for the DWI conviction at the time this offense occurred.
 
 
 30
 Defendant Jorge Cazaraz argues that his prior DWI offense should not have been considered in calculating his criminal history category because it was specifically omitted from the list of offenses in the United States Sentencing Guidelines ("U.S.S.G.") § 4A1.2(c). U.S.S.G. § 4A1.2(c) lists sentences which are to be counted and excluded for purposes of determining the criminal history category. Further, section 4A1.2(c)(2) excludes minor traffic violations from the list of prior offenses which are to be counted in determining criminal history category. Thus, Jorge Cazaraz asserts that because DWI offenses are not included on the list of offenses to be counted, his prior DWI offense should not have been used to determine his criminal history category, and he also asserts that DWI or DUI is a minor traffic offense. This argument is misplaced.
 
 
 31
 U.S.S.G. § 4A1.2, comment. (n. 5), explicitly states that convictions for driving while intoxicated or under the influence are counted, and that such offenses are not minor traffic infractions within the meaning of section 4A1.2(c). In United States v. Kingston, 922 F.2d 1234, 1239 (6th Cir.1990), cert. denied, 111 S.Ct. 2054 (1991), this court concluded that minor traffic violations are offenses which are punishable by a maximum sentence of imprisonment of five days or less. In this case, Jorge Cazaraz received a sentence of two years probation for his DWI offense, a sentence which was more than five days. Moreover, other circuits which have considered this issue have also concluded that a prior DWI or DUI offense is properly considered when calculating criminal history category. See United States v. Deigert, 916 F.2d 916, 918 (4th Cir.1990) (per curiam); United States v. Lewis, 896 F.2d 246, 249-50 (7th Cir.1990). Therefore, the district court did not err in adding three points to his criminal history score for the prior DWI offense thereby placing defendant Jorge Cazaraz in category IV.
 
 III.
 
 32
 For the reasons stated, the district court's judgment is AFFIRMED in all respects.
 
 
 
 *
 Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation