9 F.3d 110
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David McWHORTER (92-6217); Roscoe Kidd (92-6219); Andre
Gober (92-6406), Defendants-Appellants.
 Nos. 92-6217, 92-6219 and 92-6406.
 United States Court of Appeals, Sixth Circuit.
 Aug. 31, 1993.
 
 Before GUY and NELSON, Circuit Judges, and HOOD, District Judge.*
 PER CURIAM.
 
 
 1
 Defendants all entered conditional guilty pleas to various drug and firearms charges. The pleas reserved the right to challenge the denial of two suppression motions, one seeking to suppress evidence found in a search of a rental car and another seeking to suppress statements made by co-defendant Bray, who is not an appellant in this case. We find that the district court was correct in concluding that the search of the vehicle was supported by probable cause and, because we determined in Bray's direct, separate appeal that his statements were not obtained in violation of his Fifth or Sixth Amendment rights, United States v. Bray, No. 92-6218 (6th Cir. Aug. __, 1993), we conclude the same in the present case. Therefore, we affirm the rulings of the district court and the convictions of defendants in this appeal.
 
 I.
 
 2
 The events that led to the indictment in this case all started on August 9, 1991, with the arrest of Bray, Kidd, and McWhorter in Springfield, Ohio, on drug-related charges. McWhorter was able to make bail, but Kidd and Bray remained incarcerated. At the time of his arrest, Bray was on parole for an earlier drug-related conviction. On August 10, Bray requested to speak with a police officer. Officer Eggers then met with Bray, read him his Miranda rights, and Bray then signed a waiver of those rights. Bray told Officer Eggers that the drugs which were found by the Ohio police were not his or Kidd's but belonged to McWhorter, and that he was willing to cooperate in exchange for leniency. Eggers told Bray that there was nothing he could do about the parole violation charge, but that he could look into the Ohio drug charges. Bray then gave Eggers a list of drug dealers in Springfield. Eggers took notes on the back of the waiver form. Bray indicated that "Charlie Brown" (later determined to be Kevin Wright) was capable of selling the most drugs of anyone he had named.
 
 
 3
 During this same meeting, Bray informed Officer Eggers that he, Kidd, McWhorter, and "Charlie Brown" had plans to go to Clarksville, Tennessee, in late August for the purpose of selling drugs. Bray told Eggers that they would be taking nine ounces of crack cocaine and weapons. The weapons would be a TEC 9 (a nine millimeter, semi-automatic weapon) and another nine millimeter pistol. They would probably rent a car from Thrifty Car Rentals in Vandalia, Ohio, and while in Clarksville they would stay at the Motel 6 and Midtowner Motel. The drugs would be kept in a potato chip bag to throw off drug-sniffing canines, and the weapons would be carried in a pink gym bag. Although Bray had been arrested, he thought the trip would go ahead as planned.
 
 
 4
 On August 15, Officer Eggers returned to Bray and informed him that the prosecutor did not believe him. Bray testified that he thought Officer Eggers also did not believe him. In an attempt to provide support for the information about the upcoming trip, Bray told Officer Eggers that the trip to Clarksville had been done once before, in late July. On that trip they had used the same mode of operation: Bray, Kidd, McWhorter and "Charlie Brown" had rented a Chrysler from Thrifty Car Rentals, stayed at the Motel 6 and the Midtowner Motel, sold six ounces of crack cocaine for $15,000, and carried firearms. While in Clarksville, they distributed the drugs throughout the Lincoln Homes housing project from an apartment rented by a woman named "Maria." This trip had taken place around July 28.
 
 
 5
 Officer Eggers next called Officer John Atkins of the Clarksville Police Department and informed him of the upcoming trip in August and of the past trip in July. Officer Eggers also faxed pictures of McWhorter, Kidd, Bray, and Kevin Wright (a/k/a Charlie Brown) to Officer Atkins. Atkins and other members of the Clarksville Police Department then verified the July trip by checking the registration logs at the Motel 6 and the Midtowner Motel. Those records showed that on July 29 Kevin Wright had checked into the Motel 6, listing two adults on the sign-in card and giving an address in Springfield, Ohio. A trace of the car Wright listed revealed that the automobile was a Dodge rented from Thrifty Car Rentals in Vandalia, Ohio. Also on July 29 there was a registration for two adults under the name "Bill Benson." The car listed on that registration was traced to David McWhorter. On July 30, Kevin Wright checked into the Midtowner Motel, listing the same address and car as he had at the Motel 6.
 
 
 6
 Police records also indicated that on July 31 officers of the Clarksville Police Department obtained a search warrant for an apartment in the Lincoln Homes housing project based upon a confidential informant's purchase of crack cocaine. Inside the apartment the officers found drug paraphernalia and drug residue. Three individuals in the apartment gave statements to police that four black males from out of state had been selling crack cocaine. These individuals stated the men left just prior to the execution of the search warrant. The men had left following a dispute over a drug deal that had ended in weapons being fired.
 
 
 7
 After verifying the July trip, the Clarksville police began informal surveillance of the parking lots of the two motels, looking for rental cars with Ohio plates. On Saturday, August 23, an officer located a Dodge Dynasty with Ohio plates in the Motel 6 parking lot. A check of the license plate revealed that it had been rented from Thrifty Car Rentals in Vandalia, Ohio. The officer noticed that the side window of the car had been smashed with a rock. Officer Atkins then arrived on the scene and checked the motel registration log. Kevin Wright had checked into room 221 the night before, listing the same Springfield, Ohio, home address that he had listed in July. Samson Wright had checked into room 223, listing "W221," presumably indicating he was with room 221.
 
 
 8
 As the police conducted surveillance, they observed one person leave the motel and walk toward the Lincoln Homes housing project. Another officer confirmed that this person entered an apartment there. Kevin Wright and Samson Wright then discovered the broken car window and called the Clarksville police. When police arrived, two males, one who identified himself as Samson Wright, reported the damage. A short time later the police observed two males leave room 221 carrying several bags, including a pink gym bag, and enter room 223. One male from room 223 then joined them. The three individuals, later determined to be Kevin Wright, Samson Wright, and Dwight Gober, got into the rented car and ran several errands, including going to a car wash and vacuuming the glass out of the car. When the car entered the parking lot of the Midtowner Motel, across the street from the Motel 6, Kevin Wright got out and walked toward the motel office. The trunk latch had been released from inside the car, and Dwight Gober began walking toward the rear of the car. Samson Wright remained inside the car.
 
 
 9
 Clarksville police officers, with weapons drawn, then surrounded the car and placed all three defendants on the ground. After determining which individual was Kevin Wright, the defendants were told they were under arrest. Police then searched the car. Inside the trunk police found a pink gym bag that contained a nine millimeter pistol, cash, and crack cocaine. From another gym bag police recovered a TEC 9 pistol. A potato chip bag also was found, although it is unclear whether the drugs were found inside the potato chip bag or elsewhere in the trunk.
 
 
 10
 In a later conversation between Officer Eggers and Bray, Bray told Eggers that McWhorter was not able to go to Clarksville on Friday, August 22, because of a court hearing concerning the Ohio drug charges, but that McWhorter was supposed to join Kevin Wright later on Saturday. Defendant Gober also told Officer Atkins the same thing concerning McWhorter's arrival.
 
 
 11
 Defendants Kidd, McWhorter, and Gober were charged with conspiracy to distribute cocaine base between July 25 and August 23. In addition, Kidd and McWhorter were charged with unlawful possession of cocaine base with intent to distribute between July 27 and 31 and unlawful use or carrying of a firearm during and in relation to a drug-trafficking crime between July 27 and 31. Gober was charged with unlawful possession of cocaine base with intent to distribute on August 23 and unlawful use or carrying of a firearm during and in relation to a drug trafficking crime on August 23. Co-defendants Kevin Wright, Samson Wright, and Anthony Bray were charged with similar offenses.
 
 
 12
 Co-defendant Bray filed a motion to suppress certain statements made to Officer Eggers on the grounds that they were not knowingly, intelligently, and voluntarily made. Co-defendants Kevin Wright and Samson Wright, and defendant-appellant Dwight Gober all filed motions to suppress the evidence seized in the search of the vehicle on August 23. Defendants-appellants Kidd and McWhorter filed notices of adoption, adopting "by reference ... all motions and memoranda in support thereof filed by all co-defendant[ ]s prior to the trial of this matter." (App. 30, 321).
 
 
 13
 After a hearing, the district court issued its opinion denying all motions to suppress. Defendant Gober entered a conditional guilty plea, "reserving the right to appeal the denial of the motion to suppress." (District Ct. Entry No. # 232 at p. 4). Defendant McWhorter entered a conditional guilty plea, stating that "the appellate issue(s) relating to the suppression of the evidence (and the suppression of Bray's statement) are reserved for the benefit of the defendant." (App. 113.) Defendant Kidd also entered a conditional guilty plea, reserving "the right to appeal the Court's rulings on the suppression issues previously ruled on or to be ruled on." (App. 107).
 
 II.
 
 14
 Defendants seek to appeal the district court's denial of the motions to suppress the evidence seized from the rental car on August 29. In its brief before this court, the government argues that McWhorter and Kidd lack standing to appeal this issue. Standing in the Fourth Amendment context is not jurisdictional; it is a shorthand way of referring to whether the defendant had a reasonable expectation of privacy, the test that must be met if a defendant is to challenge the use of evidence found through a search. See Rakas v. Illinois, 439 U.S. 128, 133 (1978) (issue commonly referred to as "standing" really involves "the substantive question of whether or not the proponent of the motion to suppress has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge").
 
 
 15
 A valid Fourth Amendment claim requires that the defendant prove a subjective expectation of privacy that is objectively reasonable. Smith v. Maryland, 442 U.S. 735, 740. Gober was a passenger in the vehicle when it was stopped. The Supreme Court has addressed whether a passenger qua passenger normally has a legitimate expectation of privacy and has concluded that he does not. Rakas, 439 U.S. at 148-49. This circuit, subsequent to Rakas, has found it is possible for a passenger in a car to have a legitimate expectation of privacy sufficient to challenge the search of that vehicle on Fourth Amendment grounds. In United States v. Dunson, 940 F.2d 989 (6th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1488 (1992), this court held that a passenger who had participated in borrowing the car from the owner and who had personal belongings in the trunk had a legitimate expectation of privacy in the car and its contents. In the present case, the district court relied on Dunson to find that defendants Gober, Kevin Wright, and Samson Wright had "sufficient standing for their motions to suppress." (App. 83 n. 24). The government does not challenge that ruling on appeal.
 
 
 16
 Defendants Kidd and McWhorter were not owners of the vehicle, the rental car had not been rented in either of their names, and neither Kidd nor McWhorter was even a passenger in the car when it was stopped. Kidd and McWhorter have shown no reasonable expectation of privacy in the car. Through their notices of adoption, they attempted to join in Gober's motion to suppress the evidence found in the car. It is immaterial, however, that they lack standing to challenge the search of the car because we conclude that Gober's motion to suppress was properly denied.
 
 
 17
 The district court found that the police had probable cause to conduct a warrantless search of the vehicle. We agree. Probable cause is a "commonsense, practical question" to be judged from the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 230 (1983). "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir.1990). Probable cause exists where "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238.
 
 
 18
 The information Bray had provided concerning the trip to Clarksville during July, in which Bray himself had participated, was verified by the Clarksville police in almost every detail. Kevin Wright, Samson Wright, and Dwight Gober had done exactly what Bray had said they would do in late August: they rented a car from Thrifty Car Rentals in Vandalia, Ohio; Kevin Wright checked in at the Motel 6, listing the same address he had used in July; they carried a pink gym bag; one of the men was seen going into an apartment in the Lincoln Homes housing project; and they were presumably about to check into the Midtowner Motel. All of these facts indicate that the police properly could conclude that it was likely Bray's information concerning these individuals' illegal activities was also correct. See Gates, 462 U.S. at 245.
 
 
 19
 Defendants argue that the Clarksville police officers observed nothing illegal. However, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Gates, 462 U.S. at 244 n. 13. Often, innocent behavior will form the grounds for probable cause. Id.
 
 
 20
 Defendants also argue that the police had plenty of time to seek a warrant and the failure to do so is grounds for the suppression of the evidence seized. The fact that the police may have had time to obtain a warrant does not necessitate their doing so. See United States v. Markham, 844 F.2d 366, 368-69 (6th Cir.), cert. denied, --- U.S. ----, 488 U.S. 843 (1988). "[W]henever a vehicle is readily capable of use on the public roads, a warrantless search is permissible given probable cause to believe that the vehicle contains evidence." United States v. Duncan, 918 F.2d 647, 653 (6th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2055 (1991).
 
 
 21
 The moving vehicle exception to the warrant rule is well-established. If probable cause justifies a search of a vehicle which has been lawfully stopped, then that probable cause extends to justify the search of every part of the vehicle and all containers found therein in which contraband could be hidden. The nature of the containers found inside a vehicle does not define the scope of the search. The Court has stated that the contents of a paper bag are protected to the same extent as those of a suitcase or attache. Instead, a search conducted pursuant to this exception is limited by the nature of the contraband: only containers which could contain the contraband may be searched.
 
 
 22
 United States v. Crotinger, 928 F.2d 203, 205 (6th Cir.1991) (citations omitted).
 
 
 23
 The district court's denial of the defendants' motion to suppress the evidence found in the search of the vehicle is affirmed.
 
 III.
 
 24
 Defendants also seek to appeal the ruling of the district court denying Bray's motion to suppress the statements he made to Officer Eggers. The government has correctly pointed out that the defendants lack standing to challenge the admission of those statements. Inasmuch as the defendants joined in Bray's motion through their various notices of adoption and we have concluded in Bray's separate appeal that his motion to suppress was properly denied, United States v. Bray, No. 92-6218 (6th Cir. Aug. __ 1993), defendants' lack of standing is immaterial.
 
 
 25
 While only Gober has standing to raise only one issue, this court has addressed all arguments raised by all defendants on appeal. The motions to suppress both the statements made by Bray and the evidence discovered in the search of the vehicle were properly denied. Defendants' convictions are AFFIRMED.
 
 
 
 *
 Honorable Joseph M. Hood, United States District Court for the Eastern District of Kentucky, sitting by designation