74 F.3d 1241
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Antoine O'BERRY, Germaine Underwood, and Patron Steele,
Defendants-Appellants.
 Nos. 94-6536, 94-6537, 95-5311.
 United States Court of Appeals, Sixth Circuit.
 Jan. 9, 1996.
 
 Before: WELLFORD, NELSON and SUHRHEINRICH, Circuit Judges.
 DAVID A. NELSON, Circuit Judge.
 This is a drug case in which the defendants entered conditional pleas of guilty after motions to suppress the physical evidence against them were denied. Three issues are presented on appeal: (1) whether the district court erred in denying the motions to suppress; (2) whether the district court misapplied the sentencing guidelines by increasing the base offense level of one of the defendants, Germaine Underwood, for possession of a firearm; and (3) whether the district court erred in enhancing defendant Underwood's sentence on the basis of an obstruction of justice finding.
 
 
 1
 Concluding that the district court did not err in denying the motions to suppress, we shall affirm the convictions. We shall remand Mr. Underwood's case for resentencing on the sole ground there was no probative evidence that Underwood either knew of the presence of a firearm or knew that one of his companions was likely to be armed.
 
 
 2
 * On the morning of June 6, 1994, according to testimony adduced at the suppression hearing, police officers Timothy Kubajak and Robert Davis were walking a beat in the Charlotte Court area of Lexington, Kentucky. Charlotte Court, as the officers knew, has a high incidence of drug trafficking. The officers also knew that several people from Dayton, Ohio, had recently been arrested there for trafficking in crack cocaine.
 
 
 3
 A police sergeant advised the officers by radio of a tip from a confidential informant. The tip concerned crack cocaine dealers who were said to be plying their trade from a red Chevrolet with Montgomery County, Ohio, license plates. (The city of Dayton is in Montgomery County.) The car was said to be located in the parking lot of a housing project off Ash Street.
 
 
 4
 The officers went to the parking lot, where they found a vehicle matching the description given them by the sergeant. Although it was 8:30 a.m., three men were sleeping inside the car.
 
 
 5
 After calling for backup assistance the officers awakened the men and asked them for identification. The person in the driver's seat, defendant Patron Steele, was able to produce identification. The other two--defendants Antoine O'Berry, who was in the back seat, and Underwood, who was in the front passenger seat--had no identification.
 
 
 6
 As the officers talked with the suspects, they were joined by Officer Norman Allen. Officer Davis testified that Officer Allen took him aside and showed him a piece of paper with a license number provided by an informant Allen used on occasion. The license number matched that of the red Chevrolet. (The district court did not allude to this testimony, and we do not know what role, if any, it played in the denial of the suppression motions.)
 
 
 7
 Officer Kubajak testified that he thought it was suspicious for three men to be sleeping in a car at that time and place. Officer Davis testified that the housing project lot was private property. It was therefore possible, Davis said, that the men were guilty of criminal trespass--a crime with which others had been charged there in the past. The officers patted down the suspects for weapons and engaged them in questioning.
 
 
 8
 In the course of the questioning the officers learned that the red Chevrolet was a rental vehicle. The name on the rental slip did not correspond to any of the names given by the suspects. Officer Davis testified that he was told the car had been rented by a man who was visiting a girlfriend somewhere in the area, but the suspects could not come up with her full name or a residence number consistent with the numbering in that area.
 
 
 9
 While defendant Steele was being questioned, Officer Kubajak testified, defendant Steele picked up a baseball cap out of which there fell an object resembling a small cigar. Because this object gave off a strong odor of marijuana, Officer Kubajak placed Mr. Steele under arrest and moved him to Officer Allen's cruiser. There a more thorough search of Steele's person revealed a baggie of crack cocaine between his buttocks.
 
 
 10
 Messrs. Underwood and O'Berry were taken away from the Chevrolet so that it too could be searched. The search disclosed a loaded handgun and a partially smoked marijuana cigarette under the passenger seat. Underwood and O'Berry were then placed under arrest and thoroughly searched. Each of them proved to have crack cocaine between his buttocks also.
 
 
 11
 A federal grand jury indicted the defendants on a charge that the three of them, aided and abetted by each other, knowingly and intentionally possessed a measurable quantity of cocaine base (crack cocaine) with intent to distribute it, thereby violating 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. The defendants moved for suppression of the cocaine base. The magistrate judge who conducted the evidentiary hearing recommended denial of the motions. The district court accepted this recommendation. The defendants then entered conditional pleas of guilty pursuant to Rule 11(a)(2), Fed.R.Crim.P. The defendants ultimately received sentences of imprisonment ranging from 37 months (Underwood) to 63 months (Steele). Defendant Underwood has appealed his sentence, and all three defendants have appealed their convictions.
 
 II
 
 12
 Under the "totality of the circumstances" approach endorsed by the Supreme Court in Illinois v. Gates, 462 U.S. 213 (1983), and Alabama v. White, 496 U.S. 325 (1990), we believe that the officers had reasonable suspicion justifying the defendants' detention.
 
 
 13
 It is true that the record is silent as to the reliability of the confidential informant whose report triggered the events we have described. The officers obviously did not have to ignore the report, however, and they were entitled to consider whether other circumstances lent it weight. In this connection the officers could consider, for example, that the Charlotte Court area was one in which drug trafficking was common. They were entitled to consider that people from Dayton--the apparent home base of the red Chevrolet--had recently been arrested in Charlotte Court for drug dealing. The officers were entitled to be suspicious of men sleeping in a vehicle outside the housing project at 8:30 in the morning. And they were entitled to take into account the lack of identification for two of the men and the inability of the trio to account adequately for the girlfriend.
 
 
 14
 As the magistrate judge correctly decided, once marijuana was observed falling from defendant Steele's baseball cap the officers were justified in placing Steele under arrest, see U.S. v. Watson, 423 U.S. 411, 417 (1976), and searching him, see Chimel v. California, 395 U.S. 752, 762-63 (1969). They were also entitled to search the passenger compartment of the car. See New York v. Belton, 453 U.S. 454, 460 (1981).
 
 
 15
 With the discovery of the loaded gun and the marijuana cigarette under the passenger seat, the officers had probable cause to arrest the other occupants of the car. All three of the searches in which crack cocaine was discovered were thus incident to lawful arrests, and the defendants were not entitled to have the cocaine suppressed.
 
 III
 
 16
 In calculating the offense level of a person convicted of possessing illicit drugs with intent to distribute them, the sentencing guidelines say, the court is to increase the base offense level if the defendant possessed a dangerous weapon. U.S.S.G. Sec. 2D1.1. The district court imposed such an increase in Mr. Underwood's case, but not in the case of either of his companions.
 
 
 17
 Citing United States v. Cochran, 14 F.3d 1128 (6th Cir.1994), Mr. Underwood argues that the enhancement was improper because the government failed to present objective evidence that he knew the weapon was present or knew that it was reasonably probable that a weapon would be present. We agree.
 
 
 18
 In Cochran this court expressed unwillingness "to indulge the fiction that a firearm's presence always will be foreseeable to persons participating in illegal drug transactions." Id. at 1133. The mere act of being a passenger, the court went on to say, will not alone sustain a firearm enhancement; there must be objective evidence that the defendant knew a weapon was present or was likely to be present. Id. No such evidence was presented here.
 
 
 19
 The facts in the case at bar are not comparable to those in United States v. Duncan, 918 F.2d 647 (6th Cir.1990), cert. denied, 500 U.S. 933 (1991), on which the government relies. The defendant in Duncan was found to possess two extra rounds of ammunition for the revolver in question. Id. at 649. The ammunition constituted objective evidence that the defendant knew of the weapon's presence. The record of the case now before us contains no similar evidence. The district court therefore erred in increasing Mr. Underwood's guideline offense level for possession of the weapon.
 
 IV
 
 20
 Pursuant to U.S.S.G. Sec. 3C1.1, the district court also increased defendant Underwood's offense level by two after finding that Underwood made false statements--as detailed in paragraphs 17 and 18 of a presentence report prepared by a probation officer--about the reason for his possession of the crack cocaine.
 
 
 21
 Paragraph 17 of the report states that Mr. Underwood told a probation officer that he used crack cocaine (and solicited his mother to say he was a user), hoping to give the impression that the baggie found on him was for his personal use only. Apparently Mr. Underwood was in fact a crack cocaine user. If he was, we believe that it would have been an abuse of discretion to increase his offense level solely on the basis of the facts set out in paragraph 17 of the report.
 
 
 22
 We believe that paragraph 18, however, provides adequate support for the enhancement. That paragraph reads as follows:
 
 
 23
 "At his rearraignment on August 29, 1994, Underwood lied under oath to the Court when he gave a false statement indicating he possessed the crack cocaine only for personal use. Underwood subsequently changed the statement to say he possessed the crack cocaine for sale but planned to sell it in Dayton, Ohio, and did not intend to sell it in Lexington, Kentucky. On August 30, 1994, Underwood again changed his statement and indicated he did possess the cocaine with intent to sell it in Lexington, Kentucky."
 
 
 24
 Mr. Underwood argues that his offense level could not properly be increased under Sec. 3C1.1 without a finding that his conduct actually obstructed the investigation or prosecution. Under the plain language of the guideline, however, the offense level is to be increased if the defendant "attempted" to obstruct the administration of justice during the investigation, prosecution, or sentencing. If the defendant attempted to win a lower sentence by lying under oath, it is immaterial whether he succeeded.
 
 
 25
 For the reasons stated, the convictions appealed from are AFFIRMED. Mr. Underwood's sentence is VACATED, and his case is REMANDED to the district court for resentencing without an offense-level enhancement for possession of a weapon.