UNITED STATES of America,
Plaintiff–Appellee,

v.

Keith Scott BROWN, Defendant–
Appellant.

No. 90–5845.

United States Court of Appeals,
Sixth Circuit.

Argued March 29, 1991.

Decided Oct. 10, 1991.

Rehearing Denied Nov. 13, 1991.

John M. Compton, Asst. U.S. Atty., Lexington, Ky., Laura L. Klein, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Covington, Ky., for plaintiff-appellee.

Thomas E. Clay, Louisville, Ky. (argued and briefed), for defendant-appellant.

Before JONES and SUHRHEINRICH, Circuit Judges, and FEIKENS, Senior District Judge.*

NATHANIEL R. JONES, Circuit Judge.

Defendant-appellant Keith Scott Brown appeals his jury convictions and sentences for distribution of cocaine and for possession with intent to distribute. For the following reasons, we affirm the convictions, but reverse the two-level enhancement pursuant to § 2D1.1(b)(1) of the United States Sentencing Guidelines.

---

* The Honorable John Feikens, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

## I.

During the course of an on-going drug trafficking investigation, Kentucky State Police were assisted by Yvonne Gabbard and Ben Stokes, confidential informants. Both informants had prior drug histories. During this investigation, however, there were no drug charges pending against Gabbard or Stokes and thus they were not posing as informants in order to gain immunity.

On November 13, 1989, Gabbard went to an automobile repair service known as South 127 Auto Mart. Gabbard was wired in order to record the conversation. This property was owned by Gordon Woodard and leased to appellant Brown. When Gabbard arrived, she spoke to Brown's co-defendant, Ron Simpson, about some problems she was having with her car. Simpson advised Gabbard to return the next day when the parts to repair her car would be available.

On November 14, 1989, Gabbard returned to the Auto Mart. On this occasion, however, she was not wired. While Simpson was working on her car, Gabbard asked him for some cocaine. Simpson told her that she could get the cocaine from Brown. Brown had a gun when he entered the Auto Mart. Gabbard told him that Simpson said that she could get some cocaine from him. Brown reacted by pulling off Gabbard's coat in search of a wire, accusing Gabbard of being a cop, and demanding that she ingest a line of cocaine to prove that she was not a cop. Gabbard ingested the cocaine. Gabbard then left the Auto Mart, but returned several times the same day attempting to purchase cocaine. No cocaine was sold to her.

On November 14, 1989, government informant Stokes was given $1,400.00 to make a cocaine purchase. Stokes drove to Auto Mart accompanied by Officer Valerie Slaughter. Stokes knew both Brown and Simpson. Stokes went inside alone seeking to purchase cocaine from Gordon Woodard. Woodard was not in so Stokes told Brown and Simpson that he needed to buy some cocaine. After conversing, Brown left to go and obtain some. Brown returned with cocaine which he then gave to Simpson. Stokes paid Simpson $1,350.00 who then gave the money to Brown. Stokes and Simpson entered an automobile and drove off with Slaughter following. After driving for a distance, Simpson gave Stokes the cocaine. Stokes then rejoined Slaughter. No gun was involved in this transaction.

On November 23, 1989, Stokes again contacted Brown by phone and requested cocaine. An arrangement was made between Stokes and Brown for Simpson to contact Stokes. The latter contacted Stokes on November 24, 1989, and arrangements were made to meet at the Auto Mart. Upon arriving at the Auto Mart alone, Stokes was wearing an audiotape recorder. Simpson instructed him to return to the previous transaction location where they would rendezvous. They did, whereupon, in exchange for $1,340.00, Simpson gave Stokes an ounce of cocaine.

Brown and co-defendant Ronald Simpson were indicted on January 17, 1990, by a federal grand jury on four counts. Count one charged Brown and Simpson with aiding and abetting one another in the distribution of cocaine and of possession with the intent to distribute cocaine on November 14, 1989, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count two charged Brown and Simpson with the use of a firearm in connection with the cocaine offense in count one, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2. Simpson was later dismissed from count two. Count three charged Brown and Simpson with aiding and abetting one another in the distribution of and possession of cocaine, on November 14, 1989, in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2. Finally, count four charged Brown and Simpson with aiding and abetting one another in the distribution of and possession of cocaine, on November 24, 1989, in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2.

On January 26, 1990, both Brown and Simpson were arraigned in the United States District Court for the Eastern District of Kentucky and entered pleas of not guilty. Approximately two weeks prior to trial a magistrate conducted a preliminary

examination and detention hearing upon charges that Brown had attempted to obstruct justice by threatening and intimidating a government witness, Yvonne Gabbard. There were allegations that he attempted to influence her testimony at the upcoming trial. The magistrate concluded that there was clear and convincing evidence that Brown posed a danger to Gabbard and granted the government's pretrial motion for Brown's detention.

The trial commenced on March 27, 1990. On March 29, 1990, the jury rendered a verdict, finding Brown not guilty on counts one and two but guilty on counts three and four. The jury found Simpson not guilty on count one but guilty on counts three and four. Brown's base offense level was calculated to be sixteen and was increased two levels for obstruction of justice, two levels for possession of a weapon, and two levels for acting as an organizer, leader, manager or supervisor. Brown was denied a two level decrease for acceptance of responsibility. The court sentenced Brown to fifty-one months on each count to be served concurrently, with supervised release of three years. This appeal followed.

The issues raised on appeal are: (1) whether the trial court erred in failing to give an addict-informant jury instruction; (2) whether the trial court erred in partially limiting the cross-examination of a key government witness; (3) whether the evidence was sufficient to support the convictions; and (4) whether the sentencing court erred in imposing a fifty-one month sentence.

## II.

■ Brown challenges the trial court's failure to give an "addict-informant" charge to the jury. "The standard on appeal for a court's charge to the jury is whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury." *United States v. Martin*, 740 F.2d 1352, 1361 (6th Cir. 1984), *aff'd after remand*, 757 F.2d 770 (6th Cir.), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3506, 87 L.Ed.2d 636 (1985).

■ Ben Stokes was the government's key witness at trial. Stokes was also an admitted drug addict. Brown requested an addict-informant instruction below but it was rejected by the trial court. Instead, the court gave the following general witness credibility instruction:

Now, I have said that you must consider all of the evidence. That does not mean, however, that you must accept all of the evidence as true or accurate.

Because you are the sole judges of the credibility or the believability of each witness and the weight to be given to his testimony. In weighing the testimony of a witness you should consider his relationship to the Government or to the defendant; his interest, if any, in the outcome of the case; his manner of testifying; his opportunity to observe or acquire knowledge concerning the facts about which he testified; his candor, fairness and intelligence; and the extent to which he has been supported or contradicted by other credible evidence. You may, in short, accept or reject the testimony of any witness in whole or in part.

Further, the court stated in its impeachment charge:

A witness may be impeached or discredited by contradictory evidence, or by showing that he testified falsely concerning a material matter, or by evidence that at some other time, some other place, the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony.

Now, if you believe that a witness, any witness, has been so impeached, then it is within your exclusive province to give the testimony of that witness such credibility or weight, if any, you think it deserves.

The fact that a witness has previously been convicted of a felony, or a crime involving dishonesty or false statement, is also a factor that you may consider in weighing the credibility of that witness. The fact of such a conviction does not necessarily destroy the witness' credibility, but is one of the circumstances you

may take into account in determining the weight to be given to his testimony.

The government contends that the above instructions taken together fairly and adequately submitted the issues and applicable law to the jury. We agree.

There is no dispute as to whether Stokes was an admitted narcotics addict paid by police authorities. Moreover, it is clear that the jury was aware of his addiction. The dispute surrounds the question of whether Brown was entitled to an addict-informant instruction given the particular circumstances of this case.

■ This court has long recognized the importance of an addict-informant instruction in appropriate cases. *See United States v. Griffin*, 382 F.2d 823, 828–29 (6th Cir.1967) (trial court's failure to give cautionary instruction *sua sponte* held as plain error where testimony was only corroborated on minor points and where there was no direct untainted evidence against defendant). There is, however, no *per se* rule requiring that an addict-informant instruction be given in all cases involving the testimony of an addict-informant. *United States v. McGhee*, 882 F.2d 1095, 1100 (6th Cir.1989) (limiting *Griffin* to instances of "plain error"); *United States v. Williams*, 809 F.2d 75, 87 (1st Cir.1986), *cert. denied sub nom. Blandin v. United States*, 481 U.S. 1030, 107 S.Ct. 1959, 95 L.Ed.2d 531 (1987); *United States v. Broyles*, 764 F.2d 525, 527 (8th Cir.1985) (per curiam). Rather, "the need for such an instruction depends on the circumstances of each case." *Broyles*, 764 F.2d at 527.

After careful review of the circumstances presented, we find that this case is more akin to *McGhee* than to *Griffin*. Unlike the informant in *Griffin*, Stokes could not have manufactured the events leading to Brown's conviction "out of whole cloth" and Stokes' testimony could not have been "the product of his own prevarication." *Griffin*, 382 F.2d at 829. Significant corroborating evidence was introduced against Brown at trial. As in *McGhee*, the trial judge's instructions here "provided sufficient protection against the possibility of

unfair prejudice." *McGhee*, 882 F.2d at 1100.

## III.

■ The next issue is whether the trial court erred in limiting the cross-examination of the government's key witness. We think not.

On cross-examination, the court did not allow the jury to hear specific and detailed testimony concerning Stokes' addiction nor his sale of drugs prior to 1989. The trial court's reasoning for the limitation on pre–1989 conduct was a concern for unnecessarily prolonging cross-examination. Defense counsel was permitted, however, to cross-examine Stokes extensively concerning his use of and sale of cocaine during 1989 and to ask general questions concerning Stokes' pre–1989 drug related conduct. Thus, even under the above limitation defense counsel was able to elicit information concerning Stokes' pre–1989 drug addiction. In fact, concerning Stokes' pre–1989 addiction, cross-examination revealed that Stokes had been addicted to cocaine for the last ten to eleven years, had sold cocaine on several occasions, and was arrested in 1980 on possession charges. Defense counsel also probed into Stokes' arrest for fraudulent use of a credit card device in 1982 and his arrest and conviction for theft by deception in 1985.

Further, cross-examination revealed that Stokes used cocaine while working as an informant for the government, lied to the government about whether he was using cocaine during the time that he was acting as an informant and overdosed on cocaine in December 1989. Finally, defense counsel was allowed to show motive or bias with respect to Stokes' testimony by probing into his relationship with the government. Also, defense counsel was permitted to question Stokes regarding the affect cocaine had on his perception and memory.

■ A trial court may limit the cross-examination of a witness. *Dorsey v. Parke*, 872 F.2d 163, 166 (6th Cir.), *cert. denied*, 493 U.S. 831, 110 S.Ct. 103, 107 L.Ed.2d 67 (1989). We realize that "[w]here the trial court has curtailed a

**1196**

defendant's cross-examination of a 'star' government witness ... its ruling must be more carefully scrutinized." *Id.* at 166. Having carefully scrutinized the record, we find no error in the trial judge's limitation of further cross-examination of Stokes. The record clearly reveals that defense counsel was able to effectively cross-examine the government's key witness and to disclose the fact that Stokes was an addict-informant. Moreover, to the extent that Brown argues that he should have been allowed to examine Stokes' prior drug use for the purpose of impeaching his credibility, such contention is foreclosed by Fed. R.Evid. 608(b), which states in relevant part that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility" may be inquired into on cross-examination only if such conduct bears on the witness' "character for truthfulness or untruthfulness." *See also United States v. Phillips,* 888 F.2d 38, 40–41 (6th Cir.1989). Since the defendant was permitted to fully explore Stokes' potential bias and truthfulness, no further testimony was required and the trial judge did not abuse his discretion in limiting cross-examination.

## IV.

The third issue on appeal is whether there was sufficient evidence to support the convictions. Brown contends that the evidence presented at trial was insufficient to sustain his convictions on counts three and four, aiding and abetting in the distribution and possession of one ounce or less of cocaine on November 14 and 24, 1989, respectively. This issue need not detain us long.

■ In addressing the sufficiency of the evidence, this court does not sit as a trier of fact in a *de novo* trial. Rather, the standard of review for claims of insufficient evidence is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

"[T]o be found guilty of the crime of aiding and abetting in a criminal venture, a defendant must 'in some sort associate himself with the venture that he participate in it as in something he wishes to bring about, seek by his action to make it succeed.'" *United States v. Winston,* 687 F.2d 832, 834 (6th Cir.1982); *see also United States v. Quinn,* 901 F.2d 522, 530 n. 6 (6th Cir.1990). It is not necessary that Brown actually touched or possessed the cocaine. It merely must be shown that he acted or failed to act with specific intent to facilitate the commission of a crime by another. *Winston,* 687 F.2d at 835.

■ With these principles in mind and without a needless recitation of the facts, it is clear to us from the evidence presented at trial that a reasonable jury could have found the essential elements of aiding and abetting in the distribution of and possession of cocaine with intent to distribute on November 14 and 24, 1989, beyond a reasonable doubt.

## V.

The final issue raised on appeal is whether the trial court erred in imposing a fifty-one month sentence. Brown contends that the court erred by: (a) increasing his offense level by two for being an organizer, leader, manager or supervisor; (b) refusing to allow a two-level reduction for acceptance of responsibility; (c) increasing his offense level by two for obstruction of justice; and (d) increasing his offense level by two for possession of a dangerous weapon during the commission of a drug offense.

## A.

■ Section 3B1.1(c) of the United States Sentencing Guidelines ("U.S.S.G.") provides that the base offense level may be increased by two levels "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity...." In reviewing the sentencing court's determination with regard to a defendant's role in the offense, the appropriate standard of review is the clearly erroneous standard.

*United States v. Silverman,* 889 F.2d 1531, 1540 (6th Cir.1989). As to Brown's role in the offense, the trial court stated that

> I listened to the evidence in this case, and he was the man that was running the deal. And Mr. Simpson was subordinate to him. Mr. Brown was clearly the dominate figure to it. In my judgment that's the way I call it.

J.App. at 214. Given the record before us, the sentencing court's finding that Brown was an organizer was not clearly erroneous.

## B.

In reviewing the sentencing court's determination regarding whether a defendant has accepted responsibility for his criminal activity, the appropriate standard is the clearly erroneous standard. *United States v. Wilson,* 878 F.2d 921, 923 (6th Cir.1989). The sentencing judge's determination here is entitled to great deference on review because the trial court's assessment of a defendant's contrition will depend heavily on credibility assessments. *Id.* at 923. Hence, a sentencing judge's determination, with respect to the issue of acceptance of responsibility, will not be disturbed unless it is without foundation. U.S.S.G. § 3E1.1 comment. (n. 5); *United States v. Christoph,* 904 F.2d 1036, 1041 (6th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991).

The sentencing judge was of the opinion that an acceptance of responsibility reduction in this case was not warranted. After reviewing the record, we cannot say the trial judge's determination here was without any foundation and thus clearly erroneous, particularly in light of Brown's obstruction of justice.

## C.

The obstruction of justice increase was based upon charges that Brown intimidated, threatened and attempted to induce a government witness, Yvonne Gabbard. This determination is a finding of fact subject to the clearly erroneous standard. *United States v. Teta,* 918 F.2d 1329, 1332 (7th Cir.1990).

In the detention hearing before a United States magistrate judge, it was found by "clear and convincing" evidence that Brown had intimidated and threatened Gabbard. The trial court heard both Brown and Gabbard on this issue and determined Gabbard to be more credible. The court stated

> I heard and observed this witness Ms. Gabbard testify at the trial of the case, and I heard Mr. Brown at the evidentiary hearing. And I personally believe every word that that woman said on that witness stand. I observed her as she testified. And I observed the smooth way that Mr. Brown testified.... And when I see and compare these two witnesses and I compare them both, I believe her. I believe that she was telling the truth and that he tried to obstruct the orderly processes of this Court.

J.App. at 208–09. We see no clear error in the trial court's determination here.

## D.

As noted at the outset, count one in the indictment charged Brown and Simpson with aiding and abetting one another in the distribution and possession of cocaine with intent to distribute on November 14, 1989. Count two charged Brown with the use of a firearm in connection with the cocaine offense charged in count one. Count three charged Brown and Simpson with aiding and abetting one another in the distribution and possession of cocaine on November 14, 1989. Count four charged Brown and Simpson with aiding and abetting one another in the distribution and possession of cocaine on November 24, 1989. The transactions charged in counts one and three happened within hours of one another, with the transaction in count one occurring first. A gun was involved in the first transaction charged in count one, but not in the second transaction charged in count three.

The two-level increase for possession of a firearm during the commission of a drug offense was based on count one, aiding and abetting in the distribution and possession of cocaine with intent to distribute on No-

vember 14, 1989. Although Brown was convicted on drug related charges in counts three and four, he was acquitted on counts one and two. There was no evidence indicating that counts three and four involved a gun. He therefore argues that such possession of the firearm should not have been used to increase his offense level.

The government, on the other hand, maintains that the increase was valid because: (1) there is no authority which states that one must be convicted of the related crime in order to increase the offense level for possession of a weapon; and (2) one of the transactions for which Stokes was convicted followed on the heels (same day) of the transaction involving the gun for which he was not convicted. A finding by the district court that Brown possessed a firearm during a crime is a factual finding subject to the clearly erroneous standard. *United States v. Duncan,* 918 F.2d 647, 650 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2055, 114 L.Ed.2d 461 (1991).

Section 2D1.1(b)(1) of the U.S.S.G. provides that "If a dangerous weapon (including a firearm) was possessed during the commission of the offense, increase by 2 levels." In *Duncan, supra,* the defendant was charged with one count of distributing and possessing with intent to distribute cocaine. He was also charged with carrying a firearm during and in relation to a drug trafficking offense. The jury found the defendant guilty of the distribution and possession of cocaine charge but not guilty on the related firearm charge. The sentencing judge enhanced the offense level by two pursuant to § 2D1.1(b)(1) of the guidelines. In affirming the enhancement, this court stated that "[a]cquittal on a firearms carrying charge leaves ample room for a district court to find by the preponderance of the evidence that the weapon was possessed during the drug offense." *Duncan,* 918 F.2d at 652. Although instructive, *Duncan* does not directly control the question of whether the court may increase the offense level for possession of a weapon when the defendant is not convicted for the substantive drug trafficking offense to which the weapon was related.

There was no evidence showing that a dangerous weapon was possessed during the commission of the offenses in counts three and four, for which Brown was convicted. Application note 3 to § 2D1.1 provides that "The [firearm] adjustment is to be applied even if several counts are involved and the weapon was present in any of them." This language, however, does not conclusively answer the question on the record before us because it does not offer guidance as to whether an acquitted count to which the gun was attached precludes punishing the defendant for the gun in the other unrelated counts.

Under *Duncan,* if Brown had been convicted for possession but acquitted on the related gun charge, a two-level enhancement pursuant to § 2D1.1(b)(1) of the guidelines could have been appropriate. The trial judge could have found that a preponderance of the evidence showed that Brown possessed a firearm in relation to the drug trafficking offense in count one. Brown, however, was acquitted of the possession charge in count one and of the gun charge in count two.

The sentencing judge may find, by a preponderance of the evidence, possession of a weapon during the commission of a crime even if the jury did not so find beyond a reasonable doubt. *Duncan,* 918 F.2d at 652. Therefore, assuming without deciding that a conviction on count one was not necessary for the § 2D1.1(b)(1) enhancement to apply, if the sentencing court found by a preponderance of the evidence that Brown possessed a gun in connection with count three, such a finding would have been subject to the clearly erroneous standard. Regarding the § 2D1.1(b)(1) enhancement, the sentencing judge stated:

> Now, I listened to the evidence, observed the witnesses. Now, while the jury found the defendant not guilty on that incident, there had—they were operating on a burden of proof they had to hold the Government to the proof beyond a reasonable doubt. The test is a little—is a little different. I can tell you right now if I had been the fact finder, I would

have found him guilty on the gun charge in that incident with Ms. Gabbard because I believed what she said and the way she testified. I listened to her testify and observed the manner in which she testified. And so the objection—based upon the testimony I heard, the objection will be overruled.

Transcript of Sentencing Hearing at 20–21. The above quote states in full the trial judge's comments concerning the § 2D1.1(b)(1) enhancement. We find these comments insufficient to support the enhancement. While they may suggest that the court believed the defendant possessed a gun in count one, they do not support a finding by a preponderance of the evidence that Brown possessed a gun in connection with the drug transaction in *count three.* There was simply no evidence whatsoever that Brown used a firearm in connection with the latter November 14 drug transaction. While the sentencing judge may have assumed that because Brown carried a firearm earlier on November 14 he also carried one later that day, the only basis for such an assumption is conjecture, and conjecture is not enough to support an enhancement under § 2D1.1(b)(1). Therefore, the court's enhancement for possession of a gun in relation to count three was error.

## VI.

For the foregoing reasons, we AFFIRM the convictions. In addition, we AFFIRM the sentences, excepting the two-level enhancement pursuant to § 2D1.1(b)(1) of the guidelines. We REVERSE the two-level § 2D1.1(b)(1) enhancement and REMAND for resentencing consistent with this opinion.

FEIKENS, Senior District Judge, (dissenting).

I respectfully dissent. I would reverse Brown's conviction because the district court's refusal to give an addict-informant instruction deprived Brown of a fair trial and was, therefore, plain error.

While there is no *per se* rule requiring that an addict-informant instruction be given in all cases involving testimony of an addict-informant, *United States v. McGhee,*

882 F.2d 1095, 1100 (6th Cir.1989), it is clearly plain error *not* to give one when "the addict-informer's testimony [is] corroborated on only minor points, and [when] there [is] no direct untainted evidence against the defendant." *Id. See also United States v. Griffin,* 382 F.2d 823 (6th Cir.1967).

The key is corroboration. Without citing supporting facts, the majority concludes that Stokes, the sole witness against Brown, "could not have manufactured the events leading to Brown's conviction 'out of whole cloth' and Stokes' testimony could not have been 'the product of his own prevarication.'" I do not agree.

Brown's conviction rested on a controlled purchase of cocaine allegedly made by Stokes. Stokes was the sole witness who testified to that purchase. Although Officer Slaughter was waiting in the car for Stokes during the controlled buy, Officer Slaughter concedes that he did not witness it. Nor was this purchase tape-recorded, as was the controlled purchase which Stokes made of Brown's co-defendant, Simpson. In these circumstances, it cannot be said that there was direct, independent, corroborating evidence supporting Brown's conviction. We have only Stokes' word as to where he obtained the cocaine.

The jury in this case had two choices: to believe Stokes and convict or to disbelieve Stokes and acquit. The majority concedes that Stokes was a known and long-time drug addict and dealer. Yet the majority concludes that the jury did not need a special cautionary instruction regarding Stokes' credibility because at least some of Stokes' drug use and drug dealing was brought out on cross-examination and the average juror is presumed to give the proper scrutiny to the testimony of drug addicts. I find this argument unpersuasive.

First, cross-examination of Stokes regarding his prior drug use and drug dealing was sharply curtailed by the district judge. Second, the majority appears to agree with the district court that an addict-informant instruction would have been tantamount to "commenting on the evidence," and prejudicial to the government. In re-

fusing to give an addict-informant instruction, the trial judge stated:

> THE COURT: [N]ow, the reason that I didn't give the charges that you proposed like the addict-informer, I found a proposed charge in the Fifth Circuit and Devitt and Blackmar. It is discretionary with the Court.
>
> *It is a common occurrence, and I have made it a practice in eight and half years on the bench that I will not go down to the—not even close to the shoreline of commenting on the evidence.* I think that the reliability of someone that's addicted to narcotics is so well-known to the ordinary juror, the ordinary person on the street, that it does not require any comment on the court. (Emphasis supplied).

But commenting on the evidence is precisely what was required in this situation. In order to insure that Brown received a fair trial the trial judge was obligated to specifically caution the jury that Stokes' testimony should be regarded with heightened scrutiny. It is not fair to assume the "average juror" understands the reduced credibility of a drug addict. That may or may not be the case, but Brown deserved the benefit of the doubt.

I do not know where the paranoia about commenting on the evidence began. In 75 Calif.L.Rev. 1341, at 1366, this explanation is given:

> The populist political movement in the 19th century was influential in limiting the power of the trial judge over the jury. In many states, statutes and constitutional provisions restricted judicial comment on the evidence.

But, there is no such limitation on federal judges. Chief Justice Hughes, in *Quercia v. United States*, 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933), said:

> In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. *Herron v. Southern Pacific Co.*, 283 U.S. 91, 95 [51 S.Ct. 383, 384, 75 L.Ed. 857 (1931)]. In charging the jury, the trial judge is not

limited to instructions of an abstract sort. It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important; and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination. *Carver v. Jackson* [29 U.S. (4 Pet.) 1, 80 [7 L.Ed. 761 (1830)]; *Vicksburg & Meridian R. Co. v. Putnam*, 118 U.S. 545, 553 [7 S.Ct. 1, 2, 30 L.Ed. 257 (1886)]; *United States v. Philadelphia & Reading R. Co.*, 123 U.S. 113, 114 [8 S.Ct. 77, 78, 31 L.Ed. 138 (1887)]; *Capital Traction Co. v. Hof*, 174 U.S. 1, 13, 14 [19 S.Ct. 580, 585, 586, 43 L.Ed. 873 (1899)]; *Patton v. United States*, 281 U.S. 276, 288 [50 S.Ct. 253, 254, 74 L.Ed. 854 (1930)]. Sir Matthew Hale thus described the function of the trial judge at common law: "Herein he is able, in matters of law emerging upon the evidence, to direct them; and also, in matters of fact to give them a great light and assistance by his weighing the evidence before them, and observing where the question and knot of the business lies; and by showing them his opinion even in matters of fact; which is a great advantage and light to laymen." Hale, History of the Common Law, 291, 292. Under the Federal Constitution the essential prerogatives of the trial judge as they were secured by the rules of the common law are maintained in the federal courts. *Vicksburg & Meridian R. Co. v. Putnam, supra; St. Louis, I.M. & S. Ry. Co. v. Vickers*, 122 U.S. 360, 363 [7 S.Ct. 1216, 30 L.Ed. 1161 (1887)]; *Slocum v. New York Life Insurance Co.*, 228 U.S. 364, 397 [33 S.Ct. 523, 536, 57 L.Ed. 879 (1913)]; *Herron v. Southern Pacific Co., supra; Gasoline Products Co. v. Champlin Co.*, 283 U.S. 494, 498 [51 S.Ct. 513, 514, 75 L.Ed. 1188 (1931)].

Justice Oliver Wendell Holmes of the U.S. Supreme Court had no such paranoia. *See Horning v. District of Columbia*, 254 U.S. 135, 138, 41 S.Ct. 53, 54, 65 L.Ed. 185

(1920). Nor did Justice Brandeis have such paranoia. In that same case, he said, "It has long been the established practice of the federal courts that, even in criminal cases, the presiding judge may comment freely on the evidence...." *Id. See also Graham v. U.S.,* 231 U.S. 474, 478, 34 S.Ct. 148, 150, 58 L.Ed. 319 (1913); *U.S. v. Martin,* 740 F.2d 1352, 1357 (6th Cir.1984).

I would, therefore, reverse Brown's conviction, and remand the case for a new trial.