91 F.3d 145
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kelly RAMBUR and Shahan Chakmakchian, Defendants-Appellants.
 No. 95-1315, 95-1341.
 United States Court of Appeals, Sixth Circuit.
 July 30, 1996.
 
 Before: JONES and BOGGS, Circuit Judges, and COFFMAN, District Judge*
 PER CURIAM.
 
 
 1
 Two appellants, codefendants below, present differing issues before this Court on appeal. Kelly Rambur challenges the district court's imposition of a two-level enhancement for obstruction of justice at sentencing. Shahan Chakmakchian challenges the district court's refusal to adjust his offense level downward for acceptance of responsibility after giving an enhancement for obstructing or impeding the administration of justice. For the reasons that follow, we affirm the decisions of the district court.
 
 I.
 
 2
 A federal grand jury charged Rambur, Chakmakchian, and four codefendants on October 20, 1994 in a three-count indictment. The four codefendants included Vivian Torres Vazquez, Rejoemie Rivera Alano, Mohammed Hassan Falaha and Amjad Nabil Haddadin (aka Vic Nabil Haddadin). Each of the codefendants was from the Los Angeles, California area.
 
 
 3
 Count I charged all six defendants with conspiracy to use counterfeit credit cards in violation of 18 U.S.C. §§ 371 and 1029. Count II, charging Vazquez, Falaha, and Haddadin with using and trafficking in counterfeit access devices on September 6 and 7, 1994, did not charge Rambur or Chakmakchian. Count III, charging Vazquez, Alano, and Chakmakchian with using and trafficking in counterfeit access devices on September 14, 1994, did not charge Rambur.
 
 
 4
 State law enforcement authorities arrested Rambur's five codefendants on September 15, 1994, outside a tribal casino in Michigan, after several of them attempted to use counterfeit credit cards to obtain cash advances at area casinos. Later that day, Rambur was arrested at the Best Western Motel where the group had been staying.
 
 
 5
 During a search of the group's rooms, pursuant to a search warrant, police located a counterfeit identification card bearing Rambur's photograph and the name "Brandy Wells." Later on September 15, 1994, a Federal Express package addressed to "Raid Al Hatab" arrived at the Best Western Motel. The package contained counterfeit credit cards in the name of "Brandy Wells."
 
 
 6
 Vazquez, Alano, Chakmakchian, and Haddadin pleaded guilty to Count I of the Indictment. Vazquez and Alano entered into plea agreements with the Government in which they agreed to cooperate in the Government's investigation and prosecution of this case, and to testify truthfully at trial if asked to do so, in exchange for a motion for downward departure at the time of sentencing, pursuant to USSG § 5K1.1. Haddadin and Chakmakchian entered into plea agreements which did not contain cooperation agreements.
 
 
 7
 Rambur and Falaha proceeded to trial. Vazquez testified that during the ride from California to Michigan, she discussed the destination and purpose of the trip with Rambur. She also testified that she overheard Rambur arguing with Chakmakchian because Rambur was upset that she was participating in the scheme but was merely watching everyone else make money.
 
 
 8
 The Government introduced into evidence a security videotape from one of the casinos which showed Rambur standing with Chakmakchian for several minutes at a computer terminal used to obtain authorization for cash advances on credit cards. The tape showed Rambur watching Chakmakchian closely. On this occasion, Chakmakchian was using a credit card and identification with a false name.
 
 
 9
 Rambur testified in her own defense. She testified that she did not know of the plan to use counterfeit credit cards. She claims to have accompanied Chakmakchian on what she thought to be a pleasure trip to an island. She testified that she did not know that Chakmakchian had a false identification card with her picture on it.
 
 
 10
 Chakmakchian also testified in Rambur's defense. He stated that he had lied to Rambur about the purpose of the trip. He testified that he had the "Brandy Wells" identification card made without Rambur's knowledge, using a picture from a California health club.
 
 
 11
 After Rambur rested, Falaha changed his plea to guilty pursuant to a plea agreement. He agreed to testify against Rambur and cooperate in the Government's further investigation into the use of counterfeit credit cards in exchange for the Government's promise to move for a two-level downward departure at sentencing.
 
 
 12
 Falaha testified that he, Chakmakchian, and Rambur had discussed the use of false identification and credit cards before the trip to Michigan. He testified that Rambur supplied the picture and false name for the "Brandy Wells" identification card, which Falaha claims to have shown her after they arrived in Michigan. Like Vazquez, Falaha testified he heard Rambur angrily confront Chakmakchian when she realized the counterfeit credit cards intended for her use had not yet arrived. Falaha further testified that Rambur assisted the group by collecting money from others who were using the counterfeit cards. He stated that Rambur went into one casino with Chakmakchian for the express purpose of learning how to use a counterfeit credit card to obtain cash.
 
 
 13
 Rambur was convicted following the jury trial. At sentencing, the trial court increased Rambur's offense level by two points for obstruction of justice, based on its finding that she committed perjury at trial. The court concluded that Rambur's testimony went well beyond a mere denial of guilt, thus warranting the enhancement.
 
 
 14
 On October 28, 1994, Chakmakchian was released from federal custody on a $50,000.00 corporate surety bond. On December 22, 1994, the district court judge revoked Chakmakchian's bond based on a finding that he had committed perjury at the trial of Rambur. On March 13, 1995, the district court sentenced Chakmakchian and declined to award him a reduction for acceptance of responsibility, based on the district court's finding that he had obstructed justice.
 
 II.
 Kelly Rambur
 USSG § 3C1.1 provides as follows:
 
 15
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
 
 
 16
 This enhancement applies to several types of conduct, including "committing, suborning, or attempting to suborn perjury." USSG § 3C1.1, comment. (n. 3). The provision is not to be used punitively against a defendant who merely denies his or her guilt. Id. (n. 1).
 
 
 17
 A trial court's decision that a defendant has obstructed justice is reviewable only for abuse of discretion. United States v. Smart, 41 F.3d 263 (6th Cir.1994). This circuit has defined an abuse of discretion as "a definite and firm conviction that the trial court committed a clear error of judgment." Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989).
 
 
 18
 While a trial court may not automatically assess the increase against every defendant who testifies in his or her own behalf and is convicted, the enhancement is proper where the court reviews the evidence and makes an independent finding that the defendant committed perjury. United States v. Dunnigan, 113 S.Ct. 1111 (1993). The finding of perjury should encompass all of the factual predicates for a finding of perjury. Dunnigan, 113 S.Ct. at 1117. The Supreme Court defined the predicates for finding perjury as follows:
 
 
 19
 A witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.
 
 
 20
 Dunnigan, 113 S.Ct. at 1116. Accordingly, the district court must find false testimony that is material and made willfully.
 
 
 21
 The district court expressly found that Rambur's testimony went beyond a bare denial of guilt. Rambur's testimony was specifically refuted by other credible evidence. Credibility determinations are uniquely the province of the trial court. See United States v. Brown, 946 F.2d 1191 (6th Cir.1991) and Sewell v. Jefferson Co. Fiscal Court, 863 F.2d 461 (6th Cir.1988). The trial judge is in the best position to view the witnesses and to make the appropriate determinations about the witnesses' demeanor and veracity.
 
 
 22
 Rambur argues that the factual predicates of perjury are not met because the witnesses who testified against Rambur were not credible witnesses who could refute her testimony. The basis for this argument is that the witnesses testified under plea agreements which contained cooperation clauses requiring them, if called upon do so, to give complete and truthful testimony at trial on behalf of the Government.[1] This argument is meritless. While certainly that factor may have weighed in the calculus by which the trial judge measured credibility, this court cannot assume that every witness who testifies pursuant to an agreement with the Government is unbelievable. See United States v. Blandford, 33 F.3d 685, 708-09 (6th Cir.1994) and United States v. Frost, 914 F.2d 756, 766 (6th Cir.1990). Thus, the trial court did not abuse its discretion in deciding that the element of false testimony is met.
 
 
 23
 The element of willfulness can be demonstrated by repeated instances of false testimony. Dunnigan, 113 S.Ct. at 1117. Given the numerous witnesses who contradicted Rambur on many facts about which she could not innocently have been mistaken, there is ample support for the district court's finding. Id. Accordingly, the district court did not abuse its discretion in finding that the factual predicate of willfulness is met.
 
 
 24
 The district court did not specifically find that Rambur's false testimony was material. However, we have held that if a district court's findings pursuant to USSG § 3C1.1 encompass all elements of perjury except materiality, Dunnigan does not require remand, because materiality is a question of law. United States v. Seymour, 38 F.3d 261 (6th Cir.1994). In Seymour, a sex abuse case, the court held that the defendant's false denial of a sexual relationship with the victim was material to the charges for sexual abuse of a minor because it was "the very essence of the offense." Seymour, 38 F.3d at 264. Rambur's false denial of knowledge of the counterfeit credit card scheme is similarly material because it goes to the heart of the charged conspiracy to use counterfeit credit cards. Accordingly, the factual predicate for materiality is met as a matter of law.
 
 
 25
 The trial judge did not abuse his discretion in deciding that the factual predicate for perjury is met. Pursuant to USSG § 3C1.1, the trial judge was entitled to apply a two-level enhancement to Rambur's offense level for obstruction of justice.
 
 Shahan Chakmakchian
 
 26
 Chakmakchian does not dispute the district court's addition of two levels for obstruction of justice based on the finding that he committed perjury when he testified on Rambur's behalf at her trial. Rather, Chakmakchian claims this is an extraordinary case where the trial court should have credited him with acceptance of responsibility despite the obstruction-of-justice enhancement.
 
 
 27
 A district court's determination regarding a defendant's acceptance of responsibility may be overturned only if it is clearly erroneous. United States v. Hopper, 27 F.3d 378, 381-82 (9th Cir.1995).
 
 USSG § 3E1.1 provides in pertinent part:
 
 28
 (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.
 
 
 29
 * * *
 
 
 30
 Insofar as USSG § 3E1.1 relates to this case factually, its commentary assists district courts in determining whether a defendant has demonstrated acceptance of responsibility:
 
 
 31
 In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:
 
 
 32
 (a) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)....
 
 
 33
 * * *
 
 
 34
 Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply.
 
 
 35
 USSG § 3E1.1, comment. (nn. 1(a), 4).
 
 
 36
 USSG § 1B1.3, in turn, extends beyond the acts required to constitute the offense. Section 1B1.3 provides that pursuant to Chapter Three of the Guidelines, including those portions related to acceptance of responsibility, relevant conduct must be determined on the basis of the following:
 
 
 37
 (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
 
 
 38
 (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.
 
 
 39
 USSG § 1B1.3(a)(1).
 
 
 40
 These guidelines have been interpreted to mean that a court can properly deny a two-level reduction for acceptance of responsibility where the defendant's wife freely admitted her own criminal conduct, but testified falsely that her husband was not involved. United States v. Dyer, 910 F.2d 530 (8th Cir.1990). As the district court noted in the instant case, Chakmakchian's recruitment of Rambur was relevant conduct under § 1B1.3. By falsely denying her role in the offense, he failed to accept full responsibility for his conduct. Thus, on these facts alone, the district court's denial of acceptance of responsibility credit for Chakmakchian was not clearly erroneous.
 
 
 41
 Viewed more broadly, this is not one of those "extraordinary cases" appropriate for the application of both acceptance of responsibility credit and an obstruction of justice enhancement. This court has clarified the definition of the term "extraordinary case," as used in USSG § 3E1.1, comment. (n. 4):
 
 
 42
 We hold the relevant inquiry for determining if a case is an extraordinary case within the meaning of Application Note 4 is whether the defendant's obstructive conduct is not inconsistent with the defendant's acceptance of responsibility. Cases in which obstruction is not inconsistent with an acceptance of responsibility arise when a defendant, although initially attempting to conceal the crime, eventually accepts responsibility for the crime and abandons all attempts to obstruct justice. In other words, as long as the defendant's acceptance of responsibility is not contradicted by an ongoing attempt to obstruct justice, the case is an extraordinary case within the meaning of Application Note 4 and simultaneous adjustments under §§ 3C1.1 and 3E1.1 are permissible.
 
 
 43
 Hopper, 27 F.3d at 383 (emphasis added). Unless the district court specifically determines that a case is "extraordinary," it is to avoid applying the two adjustments simultaneously. Id.
 
 
 44
 Courts should employ an exacting standard in determining whether a case involving obstruction of justice is an "extraordinary case" which warrants credit for acceptance of responsibility. United States v. Williams, 940 F.2d 176, 183 (6th Cir.1991). The district court did not declare this case to be an extraordinary one nor does it meet the exacting standard of Williams. Accordingly, the district court's decision was not clearly erroneous.
 
 
 45
 AFFIRMED.
 
 
 
 *
 The Honorable Jennifer B. Coffman, United States District Judge for the Eastern and Western Districts of Kentucky, sitting by designation
 
 
 [1]
 Rambur's argument is not applicable to Chakmakchian, who testified without the benefit or burden of a plea agreement which contained a cooperation clause