NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0078n.06

No. 22-3164

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 23, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
|     Plaintiff - Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE NORTHERN DISTRICT OF |
| RICKY T. JACKSON, | ) ) | OHIO |
|     Defendant - Appellant. | ) ) | OPINION |

**Before: MOORE, McKEAGUE, and KETHLEDGE, Circuit Judges.**

KETHLEDGE, J., delivered the opinion of the court in which McKEAGUE, J., joined. MOORE, J. (pp. 6–10), delivered a separate dissenting opinion.

KETHLEDGE, Circuit Judge. Ricky Jackson pled guilty to drug-trafficking charges and the district court sentenced him to 188 months' imprisonment. Jackson now argues that the district court erred when it relied on statements from a confidential informant when calculating the drug quantity attributable to him and when applying a drug-premises enhancement. We reject his arguments and affirm.

I.

Ricky Jackson belonged to the "Grovewood Boys," a drug-trafficking organization that sold heroin, fentanyl, and crack cocaine around the east side of Cleveland. Beginning in 2018, law enforcement secured a series of wiretap warrants and recorded over 50,000 phone calls between the organization's members. A confidential informant told police that he had picked up kilograms of heroin, fentanyl, and crack cocaine from Jackson's reported residence,

15807 Huntmere Avenue, which co-conspirators referred to (on wiretapped calls) as "the Mere." The informant said that, on one occasion, he took two kilograms of fentanyl directly from Jackson at the Mere and delivered it to the organization's leader, Joseph Gray. The informant identified Jackson by his appearance, and also as Larry Jackson's brother and by the nickname "Juice."

The police thereafter searched 15807 Huntmere Avenue, where they recovered $20,000 in cash, cellular phones, drug paraphernalia, heroin and cocaine base, and some of Jackson's personal papers. Police arrested Jackson's brother, Larry Jackson, during the search, and later arrested Jackson at his girlfriend's house.

Jackson pled guilty to conspiracy with intent to distribute controlled substances and to using a communication facility in furtherance of a drug-trafficking crime. *See* 21 U.S.C. § 846, 841(a)(1), (b)(1)(C), and 843(b). Jackson admitted responsibility for "at least five grams" of heroin and fentanyl in the plea agreement; but otherwise the agreement did not set forth an agreed-upon drug quantity. The probation officer calculated Jackson's base-offense level using a total converted drug weight of 5,014 kilograms of marijuana and including an enhancement for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). The court adopted the presentence investigation report in full. Jackson appeals his sentence.

## II.

### A.

We review the district court's drug-quantity calculations for clear error. *United States v. Owusu*, 199 F.3d 329, 338 (6th Cir. 2000). The evidence that a district court considers in calculating drug quantities must have "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). Courts can hold a defendant accountable for a specific amount

of drugs only "if the defendant is more likely than not responsible for a quantity greater than or equal to that amount" and can make quantity estimates "supported by competent evidence in the record." *Owusu*, 199 F.3d at 338.

Jackson argues that the district court erred when it included the two kilograms of fentanyl that, according to the confidential informant, Jackson gave to him to give to Gray (the organization's leader). "[P]articular corroboration" for each of an informant's claims is "not required." *United States v. Armstrong*, 920 F.3d 395, 399 (6th Cir. 2019). If record evidence corroborates several of an informant's specific claims, the court may find him reliable and credit a claim that is not specifically corroborated. *Id.* In *Armstrong*, for example, a confidential informant said that she had purchased heroin from a defendant "about 70 times"—but only three of those sales were corroborated, and the defendant denied that the other sales occurred. *Id.* at 398–99. Yet that was sufficient corroboration to find the informant reliable and to attribute all 70 sales to the defendant. *Id.*

Here, the police corroborated at least four specific items of information that the informant provided regarding the drug conspiracy. First, the informant said that the conspirators stored and distributed crack cocaine, heroin, and fentanyl at the Mere. Police confirmed that information: they recovered cocaine base and heroin when at the Mere and recorded frequent references to that address as a meeting spot for drug deals on wiretapped phone calls. The informant also said the organization used a "customer phone," which co-conspirators shared to sell drugs. Police used that information to set up controlled buys through the customer phone and eventually to wiretap it, which fully corroborated the informant's assertion. The informant also identified Jackson, Joseph Gray, and Larry Jackson as members of the conspiracy, which police likewise confirmed. Finally, the informant worked as a "drug tester" for the organization and identified its drugs as

-3-

fentanyl, crack cocaine, and heroin—which was consistent with the fentanyl, fentanyl-laced heroin, and crack cocaine that the police seized during the investigation. Thus, the informant provided particularized, reliable information regarding the drug conspiracy of which Jackson was a part. The court did not clearly err when relying on the informant's statements.

Jackson also argues that the sentencing judge failed to err on the side of caution when estimating drug quantities. *See United States v. Anderson*, 526 F.3d 319, 326 (6th Cir. 2008). On the probation officer's recommendation, however, the judge did exclude five drug transactions from Jackson's drug-quantity calculations because the record lacked enough detail to estimate accurately the amounts involved in those transactions. The district court was sufficiently cautious in estimating the drug quantities here.

B.

Jackson challenges the district court's application of an enhancement for maintaining a drug premises. *See* U.S.S.G. § 2D1.1(b)(12). When reviewing a sentencing enhancement, we "accept the findings of fact of the district court unless they are clearly erroneous" and "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). Where, as here, the sole issue before the district court is a "fact-bound application of the guideline provisions," we review the district court's decision for clear error. *United States v. Jackson-Randolph*, 282 F.3d 369, 390 (6th Cir. 2002). The parties indeed agree that we review for clear error here.

The § 2D1.1(b)(12) enhancement applies when the defendant "knowingly" "maintain[s] a premises" for "the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12); *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013). Here, everyone agrees that the Mere was in fact a drug premises. And Jackson does not dispute that the Mere was

-4-

used for the purpose of distributing drugs. Jackson disputes only that he maintained the Mere. The government can prove maintenance by showing that the defendant "held a possessory interest in" the premises, or "controlled access to" the premises or "activities" there. U.S.S.G. § 2D1.1 cmt. n. 17.

The government can easily prove maintenance when the defendant lives at the premises, because residency shows both possessory interest and control. *United States v. Russell*, 595 F.3d 633, 645 (6th Cir. 2010). And Jackson himself told his probation officer that he lived at the Mere until 2020, which includes the time at issue here. The district court did not clearly err by taking him at his word, particularly since Jackson disputed none of the facts in his presentence report. *See* Sentencing Tr., 37:17, 38:8, 39:14, Feb. 14, 2022.

Moreover—as a second factor that precludes a finding of clear error here—the government presented proof that Jackson exerted control over the premises. Specifically, the informant said that Jackson repeatedly sold drugs out of the Mere and that—while at the premises—Jackson gave him two kilograms of fentanyl and crack cocaine to deliver to Gray. Jackson also stored drugs at the Mere for clients to sample, as he told Gray on a wiretapped phone call. Jackson essentially used the Mere as a stash house for months. For this reason as well, therefore, the district court did not clearly err when it applied the drug-premises enhancement. *See United States v. Taylor*, 85 F.4th 386, 390 (6th Cir. 2023).

The district court's judgment is affirmed.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** Ricky Jackson sold heroin. He admits as much. But under the federal sentencing guidelines, the drug quantity sold and the method of distributing the drugs can transform a number of years in prison to decades behind bars. Ricky Jackson pleaded guilty to selling "at least 5 grams" of heroin and fentanyl mixtures. R. 601 (Plea Agreement ¶ 17) (Page ID #3917–18). He ultimately agreed that evidence supported holding him responsible for nineteen grams of heroin. The district court, however, held Jackson responsible for two *kilograms* of fentanyl based solely on the word of an unreliable confidential informant and also found that Jackson maintained a "drug premises" based on a home at which he did not reside. Absent these findings, Jackson's guidelines range likely would have been between seventy-seven to ninety-six months' imprisonment. Instead, based on the district court's findings, Jackson's range was 188 to 235 months. The district court sentenced Jackson to 188 months' imprisonment—nearly double the highest sentence under the guidelines without such findings. The majority glosses over key factual issues in this case en route to blessing findings unsupported by a preponderance of the evidence. Accordingly, I respectfully dissent.

## I.  THE SOLE DRUG-WEIGHT EVIDENCE WAS PROVIDED BY AN UNRELIABLE INFORMANT

The majority misunderstands what is required to corroborate an informant's account. Though the government need not independently verify each detail, *United States v. Armstrong*, 920 F.3d 395, 399 (6th Cir. 2019), we have required at least some corroborating evidence that a particular defendant engaged in particular conduct. The majority's discussion of *Armstrong* demonstrates the point:  the government there corroborated the confidential informant's hearsay statement that the defendant sold her one gram of heroin on seventy occasions through law enforcement's own execution of several controlled buys of exactly one gram of heroin. *Id.* at 397–99. Here, however, the details that the government did corroborate are a far cry from the

"particularized, reliable information" at issue in cases like *Armstrong*. Maj. Op. at 4. Instead, they are basic points about the drug-trafficking organization, like where it operated and what it sold. This circumstantial evidence does little to corroborate the CI's statement to law enforcement that Jackson personally retrieved two kilograms of fentanyl from the Huntmere address—indeed, it has nothing to do with *Jackson's* role in the conspiracy. *Cf. United States v. Bates*, 315 F. App'x 591, 593–95 (6th Cir. 2009) (hearsay conversation between defendant and confidential informant concerning defendant owing co-conspirator thousands of dollars for quarter kilogram of cocaine and two pounds of marijuana was corroborated by admitted fact that co-conspirator dealt in kilograms of drugs and by intercepted call from co-conspirator that defendant owed him a large sum of money).

What is more, the CI's statement concerning the two-kilogram transaction is at odds with the evidence that the government did produce. The government admitted that it never observed Jackson at the Huntmere address, and the government never even saw him with other members of the conspiracy. The evidence that law enforcement did possess concerning Jackson's role in the conspiracy made him out to be a minor player, inconsistent with the CI's account. Out of over 50,000 intercepted phone calls, Jackson is heard on at most *five* of them. And these calls pertain to relatively small amounts of heroin, not fentanyl. In fact, the largest amount of heroin that law enforcement observed Jackson discuss was fourteen grams—an infinitesimally small amount of drugs compared to two thousand grams of fentanyl. *See United States v. Ortiz*, 993 F.2d 204, 206–08 (10th Cir. 1993) (intercepted phone call in which defendant agreed to purchase one kilogram of marijuana provided "absolutely no corroboration of the confidential informant's" account that the defendant sold three to five pounds of marijuana per week). The inferential leap to get from nineteen grams of heroin to two thousand grams of fentanyl runs afoul of the bedrock principle of

due process that courts "err[] on the side of caution" when estimating drug quantity. *United States v. Anderson*, 526 F.3d 319, 326 (6th Cir. 2008).

Finally, the majority brushes aside—indeed, it never even mentions—the CI's own addiction issues and the need for thorough corroboration of his account. Agents terminated the CI when they discovered that the CI was an opioid addict and was purchasing drugs on the side for personal use from the drug-trafficking organization. *See United States v. Brown*, 946 F.2d 1191, 1195 (6th Cir. 1991) ("recogniz[ing] the importance of an addict-informant instruction" concerning an addict's credibility unless "[s]ignificant corroborating evidence" supports the witness's testimony and the jury is aware of the addiction) *superseded by statute on other grounds*, U.S.S.G. App. C, 224 (1992); *United States v. Combs*, 369 F.3d 925, 939 (6th Cir. 2004) (same). For all of these reasons, more was required to corroborate the CI's account.

## II. THE GOVERNMENT FAILED TO PROVE THAT JACKSON MAINTAINED A DRUG PREMISES

Simply put, Jackson's relationship to the Huntmere address bears almost no resemblance to cases in which we have held that a defendant's activities show sufficient control over a residence to satisfy the maintaining element of the drug-premises enhancement. *See e.g.*, *United States v. Hernandez*, 721 F. App'x 479, 484 (6th Cir. 2018) (defendant maintained abandoned warehouse because he "secured" the site for at least three drug deliveries, "us[ed] it multiple times, and control[ed] the site during each event"); *United States v. Broadnax*, 777 F. App'x 137, 141 (6th Cir. 2019) (maintenance established because defendant "was seen at the house on a daily basis," "it was his primary residence for a period," "he appeared to enter without knocking," and defendant paid certain of the utilities bills); *United States v. Walker*, No. 22-3124, 2022 WL 17351944, at *2 (6th Cir. Dec. 1, 2022) (defendant "maintain[ed] drug-involved premises" because he lived at the residence, "carried keys to the apartment," and "furnished his bedroom," among other indicia of

control). Although the presentence report lists the Huntmere address as Jackson's residence and Jackson's license reflects the same, Jackson denied living at the residence during the relevant timeframe and explained that his license was outdated.

These statements are consistent with law enforcement's investigation and other evidence Jackson put forth during the sentencing hearing. Law enforcement never observed Jackson at the Huntmere address during the course of the investigation. Nor did agents find Jackson at the Huntmere address when executing the search warrant. *See United States v. Russell*, 595 F.3d 633, 645 (6th Cir. 2010) (evidence of maintenance included that defendant was present at residence during search and "no other people were present at the house when the police arrived"). Rather, Jackson was staying at the Grasmere address in a different city when police executed the search, which is where he was arrested. In fact, Jackson was on house arrest at the Grasmere address for a substantial period of time that overlapped with the relevant time period. The few connections between Jackson and the Huntmere, Cleveland address have innocent explanations: it was a family residence, owned by Jackson's grandmother, and where Jackson grew up. Contrary to the majority's conclusion, the district court did not base its application of the enhancement on the Huntmere address being Jackson's residence, but instead based the enhancement on Jackson's control over the residence. R. 745 (Sent'g Tr. at 28:7–9) (Page ID #5154) (overruling Jackson's objection to application of the enhancement because "the premises do not need to be simply a residence or the defendant's residence"); *id.* at 28:21–29:1 (Page ID #5154–55) (finding it "extremely relevant" that Jackson was "*living at one location*" but nonetheless obtained "the ability to go to" the Huntmere address (emphasis added)). The government recognized this point on appeal, as it never argued that it was established that Jackson lived at the Huntmere address and that we could affirm the district court on this basis alone. *See* Appellee Br. at 38 (arguing that

"Jackson possessed a sufficient interest in the residence and controlled activities there"); R. 745 (Sent'g Tr. at 27:20–28:3) (Page ID #5153–54) (government admitting that establishing that Jackson maintained the Huntmere address was "a closer call than in some situations" because "he didn't live there full-time").

Finally, the closest direct evidence related to the maintenance issue comes from the CI. This includes statements that Jackson sold crack cocaine out of the Huntmere residence and the previously discussed two-kilogram transaction. As mentioned, the district court clearly erred by relying on these uncorroborated statements from an unreliable informant, and the majority commits the same error.

### III. CONCLUSION

Once a defendant pleads guilty or is convicted, he undoubtedly loses some of the protections afforded to those who take their cases to trial. But the government must still meet its burden of proving that a defendant trafficked in a specific amount of drugs or used certain means of distribution. Jackson will now spend nearly a decade longer in federal prison based solely on the word of a confidential informant who provided hearsay evidence at odds with the rest of law enforcement's investigation and whom law enforcement terminated from the investigation. Law enforcement could have shored up its investigation and confirmed that Jackson was as involved in the conspiracy as the informant suggested or that Jackson indeed utilized the Huntmere address for drug trafficking. Agents failed to do so, however, and the majority now approves sending Jackson to prison for years beyond what is warranted. Neither our caselaw nor common sense allow this result. Accordingly, I respectfully dissent.